904 F.2d 826
 30 Soc.Sec.Rep.Ser. 128, Unempl.Ins.Rep. CCH 15523A
In re Petition of Louis W. SULLIVAN, M.D., Secretary of
Health and Human Services.
William WILKERSON, Robert J. Gardner and William E. Smith,
on behalf of themselves and all others similarly
situated, Respondents,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Petitioner,
Honorable John B. Hannum, Nominal Respondent.
William WILKERSON, Robert J. Gardner and William E. Smith,
on behalf of themselves and all others similarly
situated, Appellees,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Appellant. (Two Cases)
William WILKERSON, Robert J. Gardner and William E. Smith,
on behalf of themselves and all others similarly
situated, Appellants,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Appellee.
 Nos. 89-1786, 89-1852, 89-1856 and 89-1913.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 14, 1989.
Decided May 31, 1990.
 
 Stuart M. Gerson, Asst. Atty. Gen., Michael M. Baylson, U.S. Atty., William Kanter, Howard S. Scher (argued), U.S. Dept. of Justice, Appellate Staff, Civ. Div., Washington, D.C., for Louis W. Sullivan, M.D., Secretary of Health and Human Services.
 James M. Lafferty (argued), Jonathan M. Stein, Catherine C. Carr, Thomas D. Sutton, Richard P. Weishaupt, Community Legal Services, Philadelphia, Pa., for William Wilkerson, Robert J. Gardner and William E. Smith.
 Thomas E. Zemaitis, Helen R. Haynes, Douglas W. Vick, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for amici curiae American Medical Ass'n and American Psychiatric Ass'n.
 Kristin Houser, William Rutzick, Schroeter, Goldmark & Bender, Seattle, Wash., for amicus curiae Washington State Disability Claimants Certified as a Class in Morrison v. Sullivan, C82-888VWD.
 Before HUTCHINSON, COWEN and WEIS, Circuit Judges.
 OPINION OF THE COURT
 HUTCHINSON, Circuit Judge.
 
 I.
 
 1
 These consolidated matters concern the Secretary of Health and Human Services' (Secretary's) social security regulation defining substance addiction disorders and the standards and practices the Secretary uses administratively in determining whether an alcoholic's addiction prevents him from engaging in substantial gainful employment.[1] The district court held that the Secretary's regulation disguised a continuing policy of non-acquiescence in the law of this Circuit. Holding that the regulation was no more than a fig leaf intended to cover the Secretary's refusal to follow this Court's case law on alcoholism disability, the district court struck down the alcoholism regulation and imposed a detailed remedial order. We must decide whether the district court was correct in holding that the Secretary persists in a continuing policy of refusing to follow the judge-made law of this Circuit concerning evaluation of alcoholism disability claims; if so, we must review whether the district court's remedy was appropriate.
 
 
 2
 In his two appeals, as well as in his petition under the All Writs Act, 28 U.S.C.A. Sec. 1651(a) (West 1966), the Secretary maintains that the district court erred in ruling that the regulation concerning disability resulting from substance addiction is contrary to prior decisions of this Court and contends his regulation is in accord with our case law on alcoholism. Alternately, he maintains that the district court's remedial order is void or otherwise invalid on several grounds.
 
 
 3
 The plaintiff class is comprised of persons residing in this Circuit with medically determined and significant alcoholism whose claims for disability benefits had been denied or whose benefits had been terminated because their alcoholism was not determined to be disabling. In its cross-appeal, the class asserts that the district court erred when it held that the Secretary's regulation on substance addiction did not violate the mandate of Sec. 5(a) of the Social Security Disability Benefits Reform Act of 1984 (Reform Act). See 42 U.S.C.A. Sec. 421 note (West Supp.1990). This uncodified section of the Reform Act required the Secretary to revise his mental disorder listings to provide for a realistic evaluation of social security disability claims. The Secretary drafted the regulation here at issue in response to the Reform Act.
 
 
 4
 After carefully reviewing the record, we hold that the text of the Secretary's regulation can be squared with the law of this Circuit as declared in Purter v. Heckler, 771 F.2d 682 (3d Cir.1985), and McShea v. Schweiker, 700 F.2d 117 (3d Cir.1983). We also hold that the class did not produce sufficient evidence to support its hypothesis that the Secretary has used the regulation as a sham to disguise his deliberate persistence in a continuing policy of non-acquiescence in the law[2] as set out in those cases.[3] Therefore, we conclude that the district court erred in holding that the Secretary's regulation is invalid either on its face or as applied. On the cross-appeal, we will affirm the district court's order rejecting the class's claim that the Secretary's regulation violates the Benefits Reform Act of 1984. Since these holdings require us to vacate the district court's remedial decree, it is unnecessary for us to consider the issues the Secretary raises in connection with that decree. Therefore, the Secretary's petition under the All Writs Act, which pertained to the district court's remedial decree, will be dismissed as moot.
 
 II.
 
 5
 This suit began on May 24, 1984, when William Wilkerson (Wilkerson), Robert J. Gardner (Gardner) and William E. Smith (Smith) filed a motion to proceed in forma pauperis in the United States District Court for the Eastern District of Pennsylvania in their action, brought pursuant to 42 U.S.C.A. Secs. 405(g), 1383(c)(3) (West 1983 & Supp.1990), claiming the Secretary had erred in denying them disability benefits for alcoholism. Attached to the motion was their proposed complaint. The district court granted the motion and ordered the clerk's office to file the complaint on June 6, 1984. In it, plaintiffs claimed that they were disabled at least in part due to alcoholism and that denial of their claims for social security benefits was contrary to this Court's decision in McShea v. Schweiker, 700 F.2d 117 (3d Cir.1983).
 
 
 6
 Wilkerson, Gardner and Smith sought certification as representatives of a class of plaintiffs within the geographical boundaries of the Third Circuit who were disabled due to alcoholism and whose social security benefits were or would be denied on the ground that alcoholism is not disabling. They also sought a declaration that the Secretary's regulations concerning the evaluation of social security claims based on alcoholism were contrary to the Social Security Act, 42 U.S.C.A. Secs. 301-1397e (West 1983 & Supp.1990), and to McShea. Accordingly, they asked for an injunction to prevent the Secretary from denying or terminating benefits on the basis of his regulations in effect at the time and sought restoration of benefits to those class members illegally denied them.
 
 
 7
 The case was referred to a magistrate on October 24, 1984. In mid-1985, this Court issued its decision in Purter v. Heckler, 771 F.2d 682 (3d Cir.1985). In Purter, we considered the Secretary's application of his alcoholism regulation and his compliance with our decision in McShea. After our decision in Purter, the named plaintiffs alleged that the Secretary refused to acquiesce in the law of this Circuit as set forth in both McShea and Purter. On November 27, 1985, the claims of the three individual plaintiffs were remanded to the Secretary for administrative action. On remand, the Secretary awarded them the benefits they had sought.
 
 
 8
 The Secretary then moved to dismiss the action. Since the named plaintiffs had each received the relief sought in their complaint, the Secretary argued that there was no longer any suitable class representative. On June 24, 1986, the district court dismissed the three individual claims, but it did not dismiss the suit on behalf of the class. Shortly thereafter, seven individuals moved to intervene in the suit as named plaintiffs. The Secretary opposed these motions, arguing that the proposed intervenors had failed to exhaust their administrative remedies. On November 3, 1986, the district court accepted the Secretary's argument, denied the seven motions for intervention and dismissed the complaint.
 
 
 9
 On appeal, this Court reversed, finding that the three original plaintiffs were not inadequate as class representatives simply because they had received the social security benefits they sought. See Wilkerson v. Bowen, 828 F.2d 117, 121 (3d Cir.1987) (Wilkerson I ). In addition, we held that the district court erred when it prevented three of the seven hopeful intervenors from joining the suit. See id. at 122. We affirmed the district court's order excluding from the potential class those persons whose applications for social security benefits were finally denied more than sixty days before the filing of the complaint. See id. at 122 n. 5. We then remanded the case to the district court for further proceedings, including a determination of whether class certification was appropriate. See id. at 123.
 
 
 10
 After our remand, on December 3, 1987, the district court certified a Circuit-wide class of claimants under both Titles II and XVI of the Social Security Act with "medically determined and significant alcoholism" whose claims for benefits had been denied or whose benefits had been terminated on the basis that alcoholism is not disabling. Joint Appendix (Jt.App.) at 21. Title II of the Social Security Act provides disability benefits to persons who have contributed to the fund through payroll taxes imposed under the Social Security Disability Insurance (SSDI) program. See 42 U.S.C.A. Sec. 423(a) (West Supp.1990). Title XVI provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program, without regard to whether those persons have contributed to the program. See 42 U.S.C.A. Secs. 1381a, 1382(a) (West 1983 & Supp.1990). The standards and procedures for determining eligibility for benefits under Title II and Title XVI require persons to show they are unable to engage in substantial gainful employment.
 
 
 11
 Also on December 3, 1987, the district court permitted the intervention we ordered in Wilkerson I. In addition, the district court entertained plaintiffs' motion, dated October 17, 1986,[4] for a preliminary and permanent injunction, scheduling a hearing on the matter for December 16, 1987. There is nothing in the record to show that this hearing took place. Instead, the district court docket sheet shows that a period of discovery in the suit began in January, 1988, and extended through April, 1989.
 
 
 12
 Then, on April 14, 1989, the class renewed its motion for a preliminary and permanent injunction. The Secretary opposed this motion and filed a motion of his own on June 14, 1989, seeking summary judgment. The district court held a hearing on the class's motion for injunctive relief on June 23, 1989. It did not take evidence at this hearing; it simply heard arguments based on the record as developed in discovery.
 
 
 13
 Thereafter, in a memorandum and order dated August 25, 1989, the district court invalidated the Secretary's current alcoholism regulation, holding it was "void as being violative of the rule of law in McShea v. Schweiker, 700 F.2d 117 (3d Cir.1983) and Purter v. Heckler, 771 F.2d 682 (3d Cir.1985)." Wilkerson v. Sullivan, 727 F.Supp. 925, 938 (E.D.Pa.1989) (Wilkerson II ). This necessarily resulted in the denial of the Secretary's motion for summary judgment. Underlying the district court's order declaring the regulation void was its conclusion that the regulation veiled a continuing policy of non-compliance with this Court's case law on disability due to alcoholism. As a remedy, the district court directed the Secretary to "apply the criteria for Substance Addiction Dependence of the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-III-R) (3d ed., 1987)"[5] for the first sixty days following the date of its order and, during those sixty days, to adopt a new regulation redefining the point at which a claimant's alcoholism would be considered serious enough to require benefits without separate consideration of its effect on the claimant's residual functional capacity to work. 727 F.Supp. at 938. In addition, the district court permanently enjoined the Secretary, his agents and employees from denying or terminating disability benefits in contravention of the rule of law in McShea and Purter with respect to all individuals in the class who suffered from alcoholism. See id. Despite our decision in Wilkerson I, affirming the earlier district court order excluding from the class persons whose administrative claims were finally denied more than sixty days before the complaint was filed on June 6, 1984, the district court required the Secretary to identify and readjudicate, within a detailed set of deadlines,[6] all alcoholism-related disability claims denied or terminated on or after February 18, 1983, the date this Court had issued its opinion in McShea. See id. at 938-41.
 
 
 14
 The district court's conclusion that the Secretary was pursuing a willful policy of non-acquiescence in Circuit law[7] was contained in a section of its opinion headed "Findings of Fact." See id. at 926-35. However, the district court alternately characterized its holding on the merits in favor of the class as equivalent to the grant of summary judgment in its favor. See id. at 936 n. 11. The district court noted that since the Secretary had moved for summary judgment against the class, he would not be prejudiced by the grant of summary judgment against him on this central issue.
 
 
 15
 Disposing of the class's remaining claim, the district court held that the Secretary's adoption of his current alcoholism listing, instead of the listing proposed by the Secretary's own group of experts, did not violate Sec. 5(a) of the Reform Act. See id. at 937.
 
 
 16
 Shortly thereafter, the Secretary sought reconsideration of the remedial order in the district court pursuant to Federal Rule of Civil Procedure 59(e). Pending a ruling on the motion, the Secretary sought a stay of the remedial order from the district court. The class filed a motion to quash the Rule 59(e) motion claiming it was not timely filed. Before the Secretary could respond, the district court granted the class's motion to quash on September 25, 1989. The Secretary then moved, on September 26, 1989, to vacate the district court's order quashing his Rule 59(e) motion, arguing that the motion was timely. The district court denied the Secretary's motion to vacate on October 11, 1989; however, it did, on its own motion, grant the Secretary a stay of the remedial order pending appeal.
 
 
 17
 Before the district court had ruled upon the Secretary's Rule 59(e) motion or upon his motion for a stay pending its consideration, the Secretary, on September 22, 1989, filed a petition in this Court under the All Writs Act seeking an emergency stay of the district court's remedial decree pending consideration of the Secretary's Rule 59(e) motion in the district court. In support of his petition, the Secretary noted that the first deadline provided for in the district court's decree was just four days away and that the decree would cause long term confusion and disruption. A motions panel of this Court granted an interim stay of the district court's judgment and order on September 25, 1989, pending its review of the class's response.
 
 
 18
 Also on September 25, 1989, the class filed its response. The motions panel, after considering the response, issued an order on September 28, 1989, extending the emergency stay. That order required the Secretary to file a notice of appeal on the merits within seven days, ordered the appeal consolidated with the petition and directed that the appeal be processed to the next available panel of this Court that did not have its full complement of cases.
 
 
 19
 Following these instructions, on October 5, 1989, the Secretary filed his notice of appeal from the district court's order and judgment of August 28, 1989, and from the district court's order of September 25, 1989 quashing his original Rule 59(e) motion. On October 10, 1989, the class filed its cross-appeal. On October 23, 1989, the Secretary filed another notice of appeal, seeking review solely of the district court's order of October 11, 1989, which denied the Secretary's motion to vacate the September 25 order quashing the Secretary's Rule 59(e) motion. Once these consolidated matters were referred to this panel, we continued the stay pending issuance of this decision.
 
 III.
 
 20
 In order to understand fully the position taken by the district court and the legal questions this case presents, a historical summary of the Secretary's practice in evaluating claims for alcoholic disability is helpful, if not essential. Originally, the Secretary did not treat alcoholism as a disease, but permitted alcoholics to obtain disability benefits only when their abuse of alcohol had manifested itself in physical symptoms of an independently recognized medical disorder of sufficient severity to constitute an "impairment" precluding any gainful employment under the listing for that separate disorder. See 20 C.F.R. Sec. 404.1519(c)(2)(iii) (1967). This policy, often referred to as one requiring end-organ damage, was arguably consistent with the formerly prevailing social and legal view that an alcoholic is simply an individual who lacks the will or moral fiber to curb his self-indulgence.
 
 
 21
 As this view changed and as the medical profession, along with many segments of society, came to believe that alcoholics were victims of a disease that made it impossible for them to control their drinking, questions arose about the Secretary's refusal to recognize alcoholism and other substance addiction disorders as independent causes of disability. Accordingly, in 1975, the Secretary changed his regulation to delete the requirement that a claimant's alcoholism must manifest itself in end-organ damage before it would be considered severe enough to prevent the claimant from engaging in any substantial gainful employment. See Purter, 771 F.2d at 696-97; 40 Fed.Reg. 30,262 (1975). Under the new regulation, however, cases arose in which the Secretary appeared to adhere to his old position that alcoholism did not qualify a claimant for disability unless it had resulted in end-organ damage. McShea was one of these cases. There, we held that alcoholism could itself qualify a claimant for disability benefits if it was severe enough to preclude substantial gainful employment.
 
 
 22
 In the meantime, a more general dissatisfaction with the Secretary's practice in evaluating claims for disability caused by mental disorders had been growing. This dissatisfaction culminated in Congress's enactment of the Benefits Reform Act of 1984. The Reform Act required the Secretary "to realistically evaluate" his listings for determining when medically recognized mental disorders produced symptoms so severe as to preclude any substantial gainful employment. 42 U.S.C.A. Sec. 421 note. The Secretary appointed a working commission of experts to overhaul his mental disorder listings in compliance with Congress's mandate.
 
 
 23
 While the commission labored at its task, cases continued to come before the courts in this and other circuits in which it was held that the Secretary had failed to follow or apply properly the teaching that alcoholism can independently cause an inability to engage in substantial gainful employment. Purter was such a case. There, we expanded on McShea 's holding that alcoholism could independently cause disability and defined alcoholism as the persistent, uncontrolled use of alcoholic beverages. See Purter, 771 F.2d at 698. We did not, however, set forth any precise standard for determining when alcoholism has reached a level of severity that would objectively preclude any gainful employment without the need to consider a particular claimant's residual functional capacity. It is, of course, the inability to engage in substantial gainful employment that constitutes disability for purposes of the Social Security Act, whether benefits are sought under Title II or Title XVI.
 
 
 24
 Eventually, the Secretary's working commission submitted draft recommendations for revising his mental disorder disability regulations in accordance with the Benefits Reform Act of 1984. All the recommendations had the format of a capsule definition of the mental impairment followed by a listing of the symptoms required before the impairment itself would be considered severe enough to preclude any gainful employment, without the need to consider a claimant's remaining functional capacity.
 
 
 25
 The proposed regulation for substance addiction disorders, including alcoholism, followed this basic format and defined substance addiction disorders as "[b]ehavioral changes associated with the regular use of substances that affect the central nervous system." Jt.App. at 353 n. 20. All of the working commission's recommended draft regulations were accepted by the Secretary--except for the recommendation on substance addiction. That recommendation was rejected. In its place, the Secretary drafted a regulation that contained a definition of substance addiction similar to the one proposed by the commission,[8] but instead of listing the symptoms whose severity would be sufficient to make substance addiction disorders, including alcoholism, objectively disabling, the substance addiction regulation cross-referenced nine symptoms listed under other recognized mental and physical diseases and disorders. See 20 C.F.R. Part 404, Subpart P, Appendix 1 (Part A) Sec. 12.09 (1989). Each of these other diseases and disorders had, of course, its own medical definition. Some of them involved the same end-organ damage the Secretary had once expressly required, a requirement we rejected in McShea and Purter.
 
 
 26
 Individual cases continued to reach the district courts in which the courts held that the Secretary had failed to apply our holding that uncontrolled abuse of alcohol is an independent basis for disability if it produces symptoms severe enough to preclude substantial gainful employment.
 
 
 27
 In the instant case, when their own individual claims were denied by the Secretary for reasons they felt reflected a continuing refusal to treat alcoholism as an independent basis of disability, the initial class representatives appealed to the district court. Ultimately, they got benefits. Thereafter, on the class action complaint, the district court examined the unique format of the Secretary's substance addiction regulation, the individual reported cases in which district courts within this Circuit had reversed the Secretary's denial of disability benefits for alcoholism and the deposition testimony from a similar suit formerly pending in the United States District Court for the Western District of Washington. See Wilkerson II, 727 F.Supp. at 929-35. Thereupon, the district court concluded that the new regulation was a sham disguising the Secretary's continued adherence to a discredited notion of alcoholism and entered its broad remedial order.
 
 IV.
 
 28
 In light of the procedural confusion surrounding the Secretary's two post-judgment motions, we first examine the question of our appellate jurisdiction. See Shendock v. Director, OWCP, 893 F.2d 1458, 1461 n. 7 (3d Cir.1990) (in banc) ("[W]e are continuously required to discern whether we have jurisdiction over a case or controversy before ruling upon its merits.").
 
 
 29
 The district court entered its final order on August 28, 1989. Instead of taking a direct appeal to this Court, the Secretary served a motion in the district court under Federal Rule of Civil Procedure 59(e) seeking reconsideration of only the district court's remedial decree. On September 25, 1989, the district court quashed this motion as untimely filed.
 
 
 30
 Also on September 25, 1989, a motions panel of this Court, acting upon the Secretary's petition under the All Writs Act, 28 U.S.C.A. Sec. 1651(a), issued an interim stay of the district court's judgment and order pending further action of this Court. On September 28, 1989, the motions panel continued its stay of the district court's judgment and order pending appeal and ordered the Secretary to file a notice of appeal on the merits within seven days. The Secretary complied, filing his notice of appeal on October 5, 1989. It was docketed at No. 89-1852.
 
 
 31
 Meanwhile, before the district court, the Secretary filed another Rule 59(e) motion on September 26, 1989, asking the district court to vacate its order quashing the Secretary's original Rule 59(e) motion. The district court denied the Secretary's second Rule 59(e) motion on October 11, 1989. On October 20, 1989, the Secretary filed his second notice of appeal, this time appealing solely from the district court's order of October 11, 1989.[9] The Secretary's second appeal was docketed at No. 89-1913.
 
 
 32
 It is well-established that when a timely motion for amendment of a district court's judgment under Rule 59(e) is served, the time for appeal does not begin until after the district court has decided the Rule 59(e) motion. See Fed.R.App.P. 4(a)(4). It is also well-established that a notice of appeal filed after a timely Rule 59(e) motion has been made but before it has been decided is a nullity. See id.; Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982) (per curiam).
 
 
 33
 At first blush, it would therefore appear that the Secretary's motion to vacate filed in the district court on September 26 would render his notice of appeal filed October 5, 1989, a nullity, because as of October 5 the district court had yet to rule upon that motion. However, as a result of this Court's order of September 25, 1989, pursuant to the All Writs Act, staying the district court's judgment and remedial order, the district court had lost the power to hear the Secretary's second Rule 59(e) motion, filed September 26, 1989. Cf. EEOC v. Locals 14 & 15, Int'l Union of Operating Eng'rs, 438 F.Supp. 876, 880 (S.D.N.Y.1977) (stay pending appeal, issued by court of appeals, deprived district court of jurisdiction over those matters at issue in the stay). In short, our stay, granted on the Secretary's petition under the All Writs Act, divested the district court of its power to enforce or alter its remedial order of August 28, 1989. See Deering Milliken, Inc. v. FTC, 647 F.2d 1124, 1128-29 (D.C.Cir.1978) (mem.).
 
 
 34
 Therefore, we have jurisdiction pursuant to 28 U.S.C.A. Sec. 1291 (West Supp.1990) over the Secretary's appeal filed October 5 and docketed at No. 89-1852. In that notice of appeal, the Secretary seeks review of the district court's final judgment and order as well as the district court's order quashing the Secretary's original Rule 59(e) motion. Additionally, we also have jurisdiction over the Secretary's All Writs Act petition pursuant to 28 U.S.C.A. Sec. 1651(a).
 
 
 35
 However, we lack jurisdiction over the Secretary's appeal at No. 89-1913 because it seeks review of the district court's order of October 11, 1989, which the district court had no power to enter. Accordingly, we will dismiss the Secretary's appeal at No. 89-1913.
 
 
 36
 We do have appellate jurisdiction over the class's timely cross-appeal from the district court's judgment holding that the Secretary's promulgation of his current alcoholism regulation did not violate the mandate of Sec. 5(a) of the Reform Act. The district court had jurisdiction over this suit pursuant to 42 U.S.C.A. Secs. 405(g), 1383(c)(3) (West 1983 & Supp.1990).
 
 
 37
 The parties differ over the proper scope of appellate review. The class says we are limited to deciding whether the district court's finding that the Secretary's practice shows the regulation is a sham disguising his refusal to follow our case law is clearly erroneous. The Secretary contends that we should exercise plenary review because the district court, in effect, granted summary judgment in favor of the class and denied the Secretary's cross-motion for summary judgment.[10] The district court, in the body of its opinion, referred to its conclusion that the Secretary had continued a deliberate policy of non-acquiescence under his regulation as a finding of fact. See Wilkerson II, 727 F.Supp. at 935. In a footnote, however, that court also said its conclusion could be justified as an order granting summary judgment in favor of the class and denying the Secretary's cross-motion. Id. at 936 n. 11.
 
 
 38
 As we explain below, the district court's judgment in favor of the class fails to withstand scrutiny under either the plenary standard of review suggested by the Secretary or the more deferential clearly erroneous standard of review suggested by the class.
 
 V.
 
 39
 As set out above, this case has evolved into a dispute over whether the Secretary has willfully violated the case law of this Circuit by refusing to follow our holdings that alcoholism can, in and of itself, sometimes be so severe that it qualifies a social security claimant for SSDI or SSI benefits by preventing him from performing any substantial gainful employment. The class claims that under the current regulation a finding of severe alcoholism is never enough to prove disability. Instead, it argues, the Secretary still requires claimants to show something more, such as a separate mental illness,[11] liver disease or other end-organ damage, in order to qualify for SSDI or SSI benefits.
 
 
 40
 The class relies on three distinct kinds of evidence to support what it says is the Secretary's refusal to follow the law. First, it points to the text of the regulation itself and, by deductive reasoning from that text, argues that it shows a misunderstanding of the commands of the Social Security Act and of this Court's case law interpreting the Act. Second, it cites specific cases, in which it says the Secretary's denial of benefits was inconsistent with McShea and Purter, as evidence of his refusal to follow those cases. Third, it produced statements of SSA officials made under oath in a lawsuit formerly pending in the United States District Court for the Western District of Washington as showing direct admissions of non-acquiescence.
 
 A.
 
 41
 Before setting forth the substance of the class's evidence in detail, we will, by way of background, examine how the Secretary processes applications for SSDI and SSI benefits. The Supreme Court has outlined this process in Bowen v. Yuckert, 482 U.S. 137, 142, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987) (citations omitted). There, it said:
 
 
 42
 The initial disability determination is made by a state agency acting under the authority and supervision of the Secretary. If the state agency denies the disability claim, the claimant may pursue a three-stage administrative review process. First, the determination is reconsidered de novo by the state agency. Second, the claimant is entitled to a hearing before an administrative law judge (ALJ) within the Bureau of Hearings and Appeals of the Social Security Administration. Third, the claimant may seek review by the Appeals Council. Once the claimant has exhausted these administrative remedies, he may seek review in federal district court.
 
 
 43
 If a case reaches district court, it is generally decided on cross-motions for summary judgment. Thereafter, it follows the usual appellate process.
 
 B.
 
 44
 Under Title II, the SSDI portion of the Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. Sec. 423(d)(1)(A) (West Supp.1990).
 
 
 45
 Under Title XVI, the SSI portion of the Act, a disabled person is one who "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.A. Sec. 1382c(a)(3)(A) (West Supp.1990).
 
 
 46
 These work-related definitions must be kept in mind as cases proceed through the complex tangle of subsidiary procedural and substantive rules that apply to a determination of disability.
 
 
 47
 In Yuckert, 482 U.S. at 140, 107 S.Ct. at 2290, the Supreme Court noted that "[t]he Secretary has established a five-step sequential evaluation process for determining whether a person is disabled." The Supreme Court explained the operation of this sequential evaluation process in Sullivan v. Zebley, --- U.S. ----, 110 S.Ct. 885, 888-89, 107 L.Ed.2d 967 (1990) (citations omitted):
 
 
 48
 The first two steps involve threshold determinations that the claimant is not presently working, and has an impairment which is of the required duration and which significantly limits his ability to work. In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits.
 
 
 49
 In Zebley, the Supreme Court explained the meaning of the requirement that in order to qualify for benefits at step three of the sequential evaluation process, a social security claimant must match or equal a listed impairment. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria [applicable to that particular listing]. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Zebley, 110 S.Ct. at 891 (emphasis in original). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Id. (emphasis in original).
 
 
 50
 In Zebley, the Court also noted that there are 125 listings for adult social security claimants in the regulations. See id. at 891 & n. 6. These 125 listings describe "various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." Id. at 891.
 
 
 51
 Seventy-five percent of all adults who receive SSI or SSDI benefits are found disabled at the listings stage. The remaining twenty-five percent are found disabled under steps four and five of the sequential evaluation process. See House Committee on Ways and Means, Background Material and Data on Programs Within the Jurisdiction of the Committee on Ways and Means, 1989 ed., 101st Cong., 1st Sess., at A-2 (Comm. Print), reprinted in Brief for Class at 2a.[12] A finding of disability at the listing stage is, however, more than a simple finding that the claimant suffers from alcoholism or any other "medically determinable" disease, listed or not. Since only those claimants whose affliction leaves them incapable of working qualify for benefits, becoming eligible for benefits at the listings stage implicitly includes a finding that the symptoms of the disease have progressed to a degree that objectively precludes any gainful work.
 
 C.
 
 52
 Although the class produced other evidence in support of its motion for a permanent injunction, its theory of deliberate non-acquiescence in this Circuit's case law has its genesis in marked peculiarities in the text of the regulation the Secretary now utilizes to determine whether a social security claimant is disabled due to alcoholism at step three of the sequential evaluation process. The questioned regulation is the "listing" for substance addiction disorders, including alcoholism, and is found in a section of Appendix 1 (Part A) entitled "Mental Disorders." See 20 C.F.R. Part 404, Subpart P, Appendix 1 (Part A), Sec. 12.09. This section is one of four that is not categorized by body system. See Zebley, 110 S.Ct. at 891 n. 6.
 
 
 53
 The listing for substance addiction is unique among the mental disorders listings. To understand why the listing for substance addiction disorders is unique, it is necessary to recognize the distinction that the disability regulations make between an impairment and a listing. An impairment simply names a disorder, while a listing determines whether an impairment exists and is severe enough to preclude any gainful activity. In other words, a listing sets out the criteria from which the severity of the named impairment can be determined.
 
 
 54
 Except for substance addiction, the criteria that determine whether a mental impairment is in and of itself severe enough to preclude gainful employment are set forth within the named impairment's listing. Impairments caused by substance addiction disorders, including alcoholism, however, are not accompanied in the listing by their own criteria; instead, the severity of alcoholism and other substance addiction disorders is evaluated by cross-reference to the severity criteria of nine separate impairments named in the substance addiction disorder listing. As the introduction to the Mental Disorders section states:
 
 
 55
 The structure of the listing for substance addiction disorders, listing 12.09, is different from that for the other mental disorder listings. Listing 12.09 is structured as a reference listing; that is, it will only serve to indicate which of the other listed mental or physical impairments must be used to evaluate the behavioral or physical changes resulting from regular use of addictive substances.
 
 
 56
 20 C.F.R. Part 404, Subpart P, Appendix 1 (Part A), Sec. 12.00 A.
 
 Section 12.09 states:
 Substance Addiction Disorders:
 
 57
 Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system.
 
 
 58
 The required level of severity for these disorders is met when the requirements in any of the following (A through I) are satisfied.
 
 
 59
 A. Organic mental disorders. Evaluate under 12.02.
 
 
 60
 B. Depressive syndrome. Evaluate under 12.04.
 
 
 61
 C. Anxiety disorders. Evaluate under 12.06.
 
 
 62
 D. Personality disorders. Evaluate under 12.08.
 
 
 63
 E. Peripheral neuropathies. Evaluate under 11.14.
 
 
 64
 F. Liver damage. Evaluate under 5.05.
 
 
 65
 G. Gastritis. Evaluate under 5.04.
 
 
 66
 H. Pancreatitis. Evaluate under 5.08.
 
 
 67
 I. Seizures. Evaluate under 11.02 or 11.03.
 
 
 68
 Id. Sec. 12.09.[13] Of the nine listings cross-referenced in Sec. 12.09, four, cross-references A through D, are found in the mental disorders section. The remaining five, cross-references E through I, are not contained in the mental disorders section.
 
 D.
 
 69
 The Secretary and the class differ in their understandings of what Sec. 12.09 requires. The Secretary states that the first paragraph of the section, which mentions the regular use of substances that affect the central nervous system, is the capsule definition for alcoholism. Thus, the Secretary says if a claimant meets this definition, he is addicted to alcohol. However, it then becomes necessary to determine whether the alcoholism has progressed to the point at which it objectively precludes him from working, and this determination of severity under Sec. 12.09 is made by cross-reference. The Secretary says the cross-reference in Sec. 12.09 simply shifts the focus from the addictive disease to a determination of whether it is severe enough to be objectively disabling. The Secretary maintains that Sec. 12.09's reference to other mental disorders does not require the alcoholic to meet the additional capsule definition in the referenced listings;[14] instead, to be presumed disabled the claimant need only meet the referenced listing's severity requirements.
 
 
 70
 The Secretary's explanation of the operation of his alcoholism regulation is supported by evidence in the record. His Psychiatric Review Technique Form, Form SSA-2506-BK, published at 50 Fed.Reg. 35,062 (1985), clearly states that when a claimant has met the capsule definition for alcoholism, he must only match or equal the severity requirements of one of the referenced impairments. See Jt.App. at 588.
 
 
 71
 The Secretary's interpretation is also supported by a memorandum from Social Security Administration's (SSA's) associate commissioner for disability addressed to the SSA's Chicago regional commissioner, dated October 17, 1987. In response to a question about the severity requirements necessary to establish disability because of alcoholism under the listing, the memorandum states:
 
 
 72
 Once the capsule definition of Listing 12.09 has been satisfied, the presence of a substance addiction disorder has been established.... It is then necessary to determine which of the mental or physical cross-reference listings under Listing 12.09 should be used to assess impairment severity. The cross-reference listing selected will depend upon the manifestations of the substance addiction disorder in that particular case.
 
 
 73
 If one of the mental disorder cross-reference listings is selected to assess impairment severity, the [psychiatric] reviewer will then check [whether the severity requirements of the referenced listing are present]. It is not necessary to check as "Present" the capsule definition of that specific mental disorder listing.
 
 
 74
 Jt.App. at 570-71.
 
 
 75
 The class, however, takes issue with the Secretary's explanation of the regulatory text. It contends the Secretary's alcoholism listing is a "sham" that violates our holdings in McShea and Purter. It points to the failure of the regulatory text to state that an alcoholic does not have to meet all the requirements of the listing of a cross-referenced mental disorder, including the capsule definition of that disorder, before he is considered disabled. It maintains that the Secretary willfully refuses to recognize alcoholism as a separate disabling disease because the regulation itself means that a claimant suffering from alcoholism must always demonstrate an entirely separate disabling mental or physical impairment or disease before he will be found so severely afflicted that he is unable to work without regard to his own functional capacity. The class argues that this demonstrates the Secretary's continuing refusal to follow our holdings in McShea and Purter.
 
 
 76
 In further support, the class cites eighteen district court decisions and fifteen administrative decisions from within this Circuit in which it argues that the Secretary's denial of benefits in alcoholism cases was improper. The class does not maintain a clear distinction between the use of these cases as direct evidence of the Secretary's refusal to abide by our holdings that severe alcoholism is an independent basis for disability and their statistical use to show an unacceptably high rate of error in the treatment of alcoholism claims. The Secretary disputes the significance of these cases, insisting that they show only that errors occur in a bureaucracy as large as the SSA, and that on their facts they offer no direct evidence of his non-acquiescence in governing Circuit case law, particularly since some of them were administratively decided before we issued the McShea and Purter cases upon which the class relies.[15]
 
 
 77
 Finally, the class relies on the deposition testimony of two SSA agents in a suit in the United States District Court for the Western District of Washington that also attacked the Secretary's handling of alcoholism claims. In that suit, known as Morrison v. Heckler, No. C82-888V (W.D.Wash.), the Secretary reached a settlement with the plaintiffs on the issue of whether she was in violation of Ninth Circuit case law concerning disability due to alcoholism. The class argues that the Ninth Circuit's case law on disability due to alcoholism is so similar to ours that the deposition testimony taken in Morrison is relevant and material to show a policy of non-acquiescence in judge-made law requiring the recognition of alcoholism as an impairment independently capable of causing an inability to engage in substantial gainful employment. The Secretary challenges both the use and the weight of this testimony.
 
 VI.
 
 78
 With this background, we turn our attention to the district court's holding that the Secretary's alcoholism regulation is a sham disguising a continuing violation of this Court's holdings in McShea and Purter.
 
 A.
 
 79
 In the Social Security Act, Congress required the Secretary to recognize disabilities caused by a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." See 42 U.S.C.A. Secs. 423(d)(1)(A), 1382c(a)(3)(A). The Secretary says he has drafted and instituted the alcoholism regulation set forth in Sec. 12.09 to comply with this requirement in recognition of the fact that alcoholism is such an impairment.
 
 
 80
 In Purter, we recounted the history of the Secretary's regulations for determining disability due to alcoholism:
 
 
 81
 In 1975, the Social Security Administration amended its regulations pertaining to alcoholism. These regulations provide that alcoholism is to be assessed like any other disability; that is, by its "symptoms, signs and laboratory findings." 20 C.F.R. Sec. 404.1506(d) (1976) [now codified at 20 C.F.R. Sec. 404.1525(e) (1989) ]. There is no requirement of end-organ damage or of any physical manifestation of mental illness apart from alcoholism itself. Compare 20 C.F.R. Sec. 404.1506(d) (1976) with 20 C.F.R. Sec. 404.1519(c)(2) (1967) (amended by 40 Fed.Reg. 30,262 (1975)) (classifying alcoholism as a "personality disorder," which could not be the basis for finding of disability unless accompanied by "severe psychoneurosis or psychosis") and 20 C.F.R. Subpt. P app. Sec. 12.04(6) (stating that in order to recover benefits for alcoholism, claimant must show a habitual pattern of behavior manifested in addiction to alcohol with evidence of irreversible organ damage).
 
 
 82
 Purter, 771 F.2d at 696-97.
 
 
 83
 In neither McShea nor Purter was this Court faced with a direct and sweeping challenge to the Secretary's entire process of evaluating disability claims due to alcoholism. In neither were we asked to examine whether the Secretary's alcoholism listing was proper. In those cases, we merely had to decide whether a particular denial of benefits for alcoholism was proper under the statute and regulations. Nevertheless, the class correctly cites these cases for the proposition that alcoholism is an addictive disease that can offer an independent basis for disability without regard to whether it causes another recognized disabling mental or physical disorder. There is, however, an important proviso. The addiction must be severe enough to preclude the claimant from engaging in substantial gainful employment.
 
 
 84
 In McShea, this Court remanded to the Secretary for further proceedings the case of a chronic alcoholic whose application for disability benefits under both the SSI and SSDI programs was improperly investigated and evaluated. We criticized the administrative law judge (ALJ) for discounting the claimant's "chronic and severe alcoholism." 700 F.2d at 118. In addition, we stated that alcoholism "may be severe enough to constitute a compensable disability," expressly noting our agreement with the Ninth Circuit's statement in Griffis v. Weinberger, 509 F.2d 837, 838 (9th Cir.1975), that "chronic alcoholism ..., standing alone, can, if serious enough, amount to a disability." McShea, 700 F.2d at 118. In Griffis, the court wrote: "The proposition that chronic acute alcoholism is itself a disease, 'a medically determinable physical or mental impairment,' is hardly debatable today." 509 F.2d at 838.
 
 
 85
 In McShea, we also noted it was improper for the Secretary in evaluating alcoholism claims to end his inquiry upon finding that the claimant had no objective physical impairment. We wrote:
 
 
 86
 That theory ... has been rejected by the courts. In Hicks v. Califano, 600 F.2d 1048, 1051 (4th Cir.1979), the court said, "Nothing in the Social Security Act permits rejection of a disability claim simply because the claimant has not experienced significant end organ damage. [citation omitted] Where there is evidence of alcohol abuse, the Secretary must inquire whether the claimant is addicted to alcohol and, as a consequence, has lost the ability to control its use."
 
 
 87
 700 F.2d at 119.
 
 
 88
 In Purter, this Court once again held that the Secretary had applied an improper legal standard to decide whether someone who sought both SSI and SSDI benefits was disabled due to alcoholism. Even though the claimant's records were "replete with medical diagnoses of excessive alcohol use," an ALJ in 1978 denied his original claim because "plaintiff's abuse of alcohol ... had not resulted in any organ damage nor manifested itself in any other significant mental impairment." 771 F.2d at 686. Five years and two new applications for benefits later, an ALJ "concluded that none of Purter's impairments [was] severe enough to be disabling because there was no end-organ damage to warrant a finding that either alcoholism or hypertension was disabling." Id. at 689.
 
 
 89
 In Purter, we held that the administrative denials of Purter's claims were contrary to the Secretary's current alcoholism regulation in that they "adhered to [the Secretary's] former position that alcoholism was not itself a disabling condition." Id. at 697. We then examined in more detail the scope of our holding in McShea. Once again, we reaffirmed our rejection of the Secretary's position in McShea that his "inquiry into the issue of alcoholism ends with medical evidence supporting a finding of 'no objective physical impairment.' " Id. at 697-98. Instead, we wrote:
 
 
 90
 [T]he relevant inquiry where there is evidence of alcoholism is not whether the claimant should be able to control his drinking problem or that he says he can control it, but rather "whether the claimant is addicted to alcohol and, as a consequence, has lost the ability to control its use." The issue of alcoholism, and its interrelationship with other impairments, must then be evaluated to determine whether the claimant can engage in substantial gainful activity.
 
 
 91
 Id. (citations omitted).
 
 Then, in a footnote, we wrote:
 
 92
 In McShea, we discussed the scope of the ALJ's inquiry once evidence of alcohol abuse is discovered. However, we did not state that the ALJ should end his inquiry once he has decided whether the claimant is addicted to alcohol, and, as a consequence, has lost the ability to control its use. 700 F.2d at 119. Taken in the context of our entire discussion of relevant precedent on the issue, the ALJ must then determine whether alcoholism, alone or in combination with other impairments, prevents the claimant from engaging in substantial gainful employment.
 
 
 93
 771 F.2d at 698 n. 18.
 
 
 94
 Thus, our holdings in McShea and Purter reflect the following principles: (1) alcoholism is defined as an inability to control the use of alcohol; (2) alcoholism, by itself, can constitute a disability for purposes of the SSI and SSDI programs; (3) the Secretary must recognize that end-organ damage is not the only way to prove disability due to alcoholism; (4) the fact that a claimant suffers from alcoholism is not the end of the inquiry for purposes of awarding SSI or SSDI benefits; and (5) instead, the claimant's alcoholism must be severe enough to prevent him from engaging in substantial gainful employment.
 
 B.
 
 95
 Mindful of this, we turn to an examination of the district court's holding that the Secretary's alcoholism listing is in violation of McShea and Purter. We exercise plenary review over the district court's conclusion of law that the Secretary's alcoholism listing is contrary to the prior decisions of this Court. The Supreme Court has recently reminded us that "[s]ince the Social Security Act expressly grants the Secretary rulemaking power, ' "our review is limited to determining whether the regulations promulgated exceeded the Secretary's statutory authority and whether they are arbitrary and capricious." ' " Zebley, 110 S.Ct. at 890 (citations omitted). See also Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44, 104 S.Ct. 2778, 2781-83, 81 L.Ed.2d 694 (1984) ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.").
 
 
 96
 We have examined the language of Sec. 12.09 closely to see whether, on its face, the alcoholism listing is capable of supporting the Secretary's explanation of its operation. The second paragraph of the listing reads: "The required level of severity for these disorders is met when the requirements in any of the following (A through I) are satisfied." This sentence, in context, states that alcoholism is objectively severe enough to render a claimant unable to perform any gainful activity without reference to his residual functional capacity only "when the requirements" of the listing for any one of the other cross-referenced mental or physical disorders are met.
 
 
 97
 The Secretary argues that "when the requirements ... are satisfied" refers only to the severity requirements of the cross-referenced listings and not to the capsule definition of the cross-referenced disorder. The class says "when the requirements ... are satisfied" means that an alcoholic must prove not only his alcoholism and its severity, in accordance with the cross-referenced severity requirements, but must also prove all the requirements of the separate disability listing, including the cross-referenced disorder's capsule definition, if any.
 
 
 98
 Unquestionably, the second paragraph of Sec. 12.09 would be clearer if the Secretary amended it to read: "The required level of severity for these disorders is met when the severity requirements in any of the following (A through I) are satisfied."
 
 
 99
 Nevertheless, based upon our own reading of the regulatory language, we conclude that the Secretary's construction is a reasonable one and one that we will apply here. See Monsour Medical Center v. Heckler, 806 F.2d 1185, 1193 (3d Cir.1986), cert. denied, 482 U.S. 905, 107 S.Ct. 2481, 96 L.Ed.2d 373 (1987). We will, therefore, consider whether the alcoholism listing, as the Secretary construes it, is in conformity with our decisions in McShea and Purter and whether, so construed, the listing violates the disability provisions found in the SSI and SSDI portions of the Social Security Act.
 
 
 100
 In its capsule definition, the listing recognizes that alcoholism is a separate, valid cause of disability. The regulation's cross-reference to the severity criteria of separate listings in the mental disorders section does not require a claimant diagnosed as an alcoholic to meet an entirely separate disability listing before qualifying for benefits; instead, the claimant must only meet the referenced listing's severity requirement(s). Therefore, the listing recognizes that alcoholism, by itself, can, if severe enough, constitute a disability for purposes of the SSI and SSDI programs.
 
 
 101
 McShea and Purter require nothing more than this. The class is wrong to the extent it implies that those cases hold that a diagnosis of alcoholism without an examination of its severity is sufficient to qualify a claimant for benefits. In Purter, we made this point explicit, stating in footnote eighteen that the ALJ's disability inquiry does not end upon the diagnosis of alcoholism. See Purter, 771 F.2d at 698 n. 18. Instead, the ALJ must go on to evaluate whether the claimant's alcoholism was so severe that it prevented "the claimant from engaging in substantial gainful employment." Id.
 
 
 102
 The Supreme Court, in Zebley, recognized that matching or equaling a listed impairment at step three meant that a claimant is presumed unable to perform any gainful activity. See 110 S.Ct. at 889. As the Supreme Court explained, there are SSI and SSDI claimants whose impairments are not severe enough to prevent them from performing any gainful activity but who still qualify for benefits under the Social Security Act. See id. Steps four and five of the sequential evaluation process operate to sort out those claimants whose disabilities do not prevent them from performing any gainful activity but whose disabilities do prevent them from performing any substantial gainful activity--the statutory standard for disability. Not all persons whose abuse of alcohol has progressed to the point that they are unable to control their drinking are incapable of any gainful employment. Common medical understanding does not square with an assumption that every person who meets the clinical definition of alcoholism, and is thus unable to control his drinking, is ipso facto unable to perform any gainful activity. Inquiry into the severity of a claimant's alcoholism is required by the law, as we declared it in McShea and Purter.
 
 
 103
 Were we to accept the class's argument that the disability inquiry should end at step three of the sequential evaluation process upon the mere diagnosis of alcoholism, persons afflicted with this addictive disorder would be relieved of showing that their affliction was severe enough to preclude substantial work. An award of disability benefits without such a showing would not only violate McShea, Purter and Zebley, but would also contradict Congress's intent in limiting disability benefits under the Social Security Act only to those who are unable to perform substantial gainful activity.
 
 
 104
 The class also points to the Secretary's cross-references to non-mental impairments in the alcoholism listing as an indication that the present reference listing violates McShea and Purter. The class is correct in asserting that an alcoholic who meets the capsule definition for alcoholism still needs to display all of the requirements set forth in the cross-referenced listings for one of the physical impairments mentioned in Sec. 12.09 in order to qualify for benefits at step three of the evaluation process on the basis of a non-mental impairment. Indeed, the Secretary does not dispute this fact. Thus, an alcoholic with liver damage is in no different position than a non-alcoholic with liver damage in demonstrating that he is unable to perform any gainful employment as a result of his liver condition.
 
 
 105
 However, this is not a basis for holding that the Secretary's regulation violates McShea and Purter. In most cases, an alcoholic whose regular use of alcohol has manifested itself in a medically determinable physical disease will also have exhibited at least some of the symptoms of the mental disorders Sec. 12.09 associates with substance addiction. If his symptoms meet the severity tests of any associated mental disorder, he will be presumed incapable of gainful employment and will obtain benefits at step three of the evaluation process solely on the basis of his mental disorder, without consideration of his physical condition. If, on the other hand, his symptoms do not meet the severity standards of any particular associated mental or physical disorder, he will not be entitled to benefits at step three, but will require further evaluation of his own particular abilities at steps four and five. There is nothing unusual about this. Indeed, whenever any claimant has a combination of listed disorders, no one of which matches or equals any individual disorder's severity test, the evaluation always proceeds to steps four and five. See Zebley, 110 S.Ct. at 892-94.
 
 
 106
 The Secretary points out that mentioning certain non-mental impairments in the cross-reference section of the alcoholism listing does not limit a claimant's ability to recover without showing these physical impairments. Instead, according to the Secretary, these non-mental impairments are listed to inform SSA adjudicators that claimants who suffer from alcoholism and yet fail to display the necessary mental disorder severity levels may still qualify for benefits if they suffer from an alcoholism-related physical impairment. Although it might be better to set this forth in the text of the regulations itself, the failure to do so is not inconsistent with the Secretary's construction. Therefore, the deference we owe the Secretary precludes us from holding Sec. 12.09 invalid on this basis.
 
 
 107
 Accordingly, mention of certain physical impairments in the alcoholism listing's cross-reference section does not, in and of itself, establish a return to the Secretary's former policy that only claimants with end-organ damage can qualify as being disabled due to alcoholism. Such a return, of course, would be a violation of our holdings in McShea and Purter that end-organ damage cannot be the only way to prove disability due to alcoholism. However, inclusion of physical impairments in the alcoholism listing's reference section does not limit a claimant's ability to prove disability due to alcoholism under the mental disorder cross-references without any physical manifestations of the disease. Nor does it limit a claimant's ability to qualify for benefits under steps four and five of the evaluation process. Therefore, inclusion of these physical impairments in the alcoholism listing is not a per se violation of McShea, Purter or the Social Security Act. The Secretary's alcoholism listing is not, on its face, contrary to McShea, Purter or the Act.
 
 C.
 
 108
 The class, however, also claims that the Secretary, in practice, applies Sec. 12.09 in violation of McShea and Purter. The district court appears to have accepted this argument.
 
 
 109
 In holding that the regulation, as applied, was contrary to law, the district court once again relied upon the text and format of the listing. We have already determined that the listing's text is not necessarily in conflict with McShea and Purter. However, as the district court noted, the format of the alcoholism regulation is suspect because it differs from the other mental disorder listings; it is the only reference listing contained in the mental disorders section. While that format alone is not enough to invalidate the listing in light of the Secretary's explanation of its operation, the explanation itself would be contradicted if the class could produce sufficient evidence to persuade a factfinder that the Secretary's practice is contrary to his benign explanation. Recognizing this, the district court relied on deposition testimony taken from a case since settled in the United States District Court for the Western District of Washington.
 
 
 110
 This testimony, from two SSA officials, was, however, consistent with the Secretary's own explanation of the operation of the alcoholism listing. In the testimony, which the district court has excerpted in relevant part, see Wilkerson II, 727 F.Supp. at 933-35, the officials explained that the mere diagnosis of alcoholism is not enough, standing alone, to qualify a claimant for benefits. See id. Instead, the officials stated, the disability inquiry then becomes focused upon the severity of a claimant's alcoholism and whether it prevented the performance of substantial gainful employment. See id. This comports fully with the holdings of McShea and Purter. See, e.g., Purter, 771 F.2d at 698 n. 18.
 
 
 111
 When the district court relied on these officials' testimony as further evidence of the Secretary's non-acquiescence in governing Third Circuit law, it did so based upon its erroneous understanding of the requirements of McShea and Purter. The district court appears to have understood those cases to stand for the proposition that the diagnosis of alcoholism, without proof of its severity, qualifies a claimant for benefits. As we have explained, this is an incorrect understanding of the two cases. Thus, the district court's reliance upon this testimony is clearly insufficient to sustain its order granting judgment in favor of the class. The testimony cannot support a finding that the Secretary's alcoholism listing, as applied, violates McShea, Purter or the Social Security Act.[16]
 
 
 112
 The district court also relied upon a number of reported district court decisions from courts within the Third Circuit that reversed the Secretary's denial of benefits to alcoholism disability claimants or remanded the cases to the Secretary for further proceedings.[17] The class cited these decisions in support of its theory that the Secretary, despite our rulings in McShea and Purter, continues to require proof of end-organ damage before awarding SSDI or SSI benefits on account of alcoholism. The district court examined these reported cases and found that they "show[ ] a clear intent and direct choice by the Secretary to ignore McShea and Purter, two cases that he, like anyone else who is directly affected by a judicial mandate, is supposed to obey." Wilkerson II, 727 F.Supp. at 933.
 
 
 113
 The Secretary does not claim that his procedure for determining whether an SSDI or SSI claimant is disabled due to alcoholism is completely accurate. In the face of the reported decisions relied upon by the district court, he could hardly do so. He does, however, attempt to distinguish the reported cases the district court relied upon. In this connection, he contends that only two of the cases actually imposed a requirement of end-organ damage in violation of McShea and Purter.
 
 
 114
 We have independently examined the cases and hold the district court clearly erred in its conclusion. To show why they do not support the district court's conclusion, it is unfortunately necessary to summarize each of them.
 
 
 115
 1. Andrews v. Heckler, 573 F.Supp. 1089, 1092-93 (E.D.Pa.1983). While the ALJ required proof of end-organ damage, the administrative decision preceded this Court's decisions in McShea and Purter.
 
 
 116
 2. Freund v. Heckler, No. 83-2309 (W.D.Pa. Nov. 30, 1984). Plaintiff was not an alcoholic; instead, he was dependent upon other drugs. Since the ALJ, in his decision dated July 29, 1983, failed to consider plaintiff's drug use, the case was remanded to the ALJ for further consideration.
 
 
 117
 3. Ward v. Heckler, No. 83-6257 (E.D.Pa. Mar. 18, 1985). Plaintiff's motion for attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C.A. Sec. 2412 (West Supp.1990), was granted upon a generalized finding that the Secretary had failed to evaluate plaintiff's disability, alcoholism and drug dependency, in accord with McShea.
 
 
 118
 4. Murphy v. Heckler, 613 F.Supp. 1233 (W.D.Pa.1985). The ALJ found that plaintiff had the residual functional capacity to work. Although plaintiff was an alcoholic, the ALJ did not consider alcoholism. The case was remanded to the ALJ for development of evidence of alcoholism.
 
 
 119
 5. Nangle v. Heckler, 598 F.Supp. 341 (E.D.Pa.1984). The ALJ required end-organ damage in order to prove disability due to alcoholism. The ALJ held his hearing on October 1, 1982, which preceded both McShea and Purter. The district court reversed the ALJ's decision and ordered that benefits be awarded. The Secretary admits that this case was decided in violation of McShea.
 
 
 120
 6. Veal v. Heckler, 610 F.Supp. 1094 (E.D.Pa.1985). The ALJ found no severe impairment due to alcoholism but failed to list the finding of alcoholism as an impairment. The case was remanded for evaluation of the cumulative effect of all of plaintiff's impairments.
 
 
 121
 7. McShea v. Schweiker, No. 81-2832 (E.D.Pa. Dec. 5, 1985). Plaintiff was awarded counsel fees under the EAJA. This case was ruled upon administratively prior to our McShea decision, since it was on direct appeal at the time. On remand, in a reversal of his prior position, the Secretary awarded benefits of his own accord.
 
 
 122
 8. Allen v. Schweiker, 666 F.Supp. 720 (E.D.Pa.1986). This is another EAJA case. Plaintiff was awarded benefits in 1970. In December, 1980, his benefits were cut off. Plaintiff's main and original impairment was a mental illness; his alcoholism was an ancillary condition. However, the ALJ failed to evaluate the severity of plaintiff's alcoholism. It should be noted, though, that the ALJ's determination preceded McShea.
 
 
 123
 9. Lymore v. Heckler, No. 84-2442, 1986 WL 9892 (E.D.Pa. Sept. 8, 1986). The district court reversed the Secretary's denial of benefits. The ALJ diagnosed alcoholism, but rejected a finding of disability on this ground because plaintiff failed to follow prescribed treatments to remedy his condition. The district court found that plaintiff's alcoholism was severe enough to constitute disability.
 
 
 124
 10. Postell v. Bowen, No. 85-0345, 1986 WL 11826 (E.D.Pa. Oct. 22, 1986). The district court held that the Secretary did comply with McShea. However, a remand was granted for development of the record in light of the newly promulgated alcoholism listing, Sec. 12.09.
 
 
 125
 11. Martinez v. Bowen, No. 86-4856, 1988 WL 33911 (E.D.Pa. Mar. 30, 1988). Plaintiff sought a remand to the ALJ so that he could present "new evidence" of his drug and alcohol addictions. The district court granted a remand, on the ground that the transcribed record before the ALJ was of poor quality. On remand, the ALJ permitted plaintiff to introduce evidence of his drug and alcohol addictions, even though plaintiff had denied such an addiction at the original administrative hearing. In Wilkerson II, the district court wrote that Martinez "implicated McShea and Purter only marginally if at all." 727 F.Supp. at 932 n. 9.
 
 
 126
 12. Nero v. Bowen, No. 85-3281, 1988 WL 68916 (D.N.J. June 28, 1988). This is another EAJA case. Plaintiff was awarded counsel fees for the Secretary's decision to grant benefits while the litigation was pending. Plaintiff's disability was his heart condition. While the ALJ found that plaintiff's alcoholism was not disabling, the district court criticized the Secretary for failing to develop a full and fair record on the issue as McShea required.
 
 
 127
 13. Saunders v. Bowen, No. 83-3706, 1988 WL 107598 (E.D.Pa. Oct. 14, 1988). This is still another EAJA case. The Secretary granted plaintiff's application for benefits once the case was remanded to the ALJ for evaluation under Sec. 12.09 which became effective while this case was pending. The district court found that prior to the remand for evaluation under Sec. 12.09, the ALJ had failed to inquire properly into whether plaintiff was addicted to alcohol, as was required under McShea.
 
 
 128
 14. Schultz v. Bowen, No. 87-2185, 1988 WL 124627 (E.D.Pa. Nov. 17, 1988). The ALJ denied plaintiff's application for SSDI benefits because there was no direct evidence that plaintiff was an alcoholic during the period in which he was insured under the program. The district court remanded the case to the ALJ, finding that evidence both before and after the insured period created an inference that plaintiff was an alcoholic during the period of insured status. Thus, a remand was required to analyze the severity of plaintiff's alcoholism at that time. The district court in Wilkerson II wrote that Schultz "implicated McShea and Purter only marginally if at all." 727 F.Supp. at 932 n. 9.
 
 
 129
 15. Burton v. Bowen, 704 F.Supp. 599 (E.D.Pa.1989). This is another case that the district court in Wilkerson II found to implicate "McShea and Purter only marginally if at all." 727 F.Supp. at 932 n. 9. Plaintiff complained of pain from an ulcer. The ALJ found that plaintiff contributed to the pain since he failed to follow prescribed treatment, which included abstention from alcohol. Although the district court determined that plaintiff was eligible for benefits, the court did not criticize the Secretary for failing to inquire further into plaintiff's use of alcohol.
 
 
 130
 16. Hamer v. Bowen, No. 87-3867, 1989 WL 14079 (E.D.Pa. Feb. 21, 1989). This is another case that the district court in Wilkerson II found to implicate "McShea and Purter only marginally if at all." 727 F.Supp. at 932 n. 9. Plaintiff in this case was an alcoholic who, at step four of the sequential evaluation process, proved that he could not perform his prior work as a truck driver. As a result, the burden shifted to the Secretary at step five to prove that plaintiff could perform other work in the national economy. The ALJ found that the Secretary met his burden at step five and denied benefits. The district court reversed the ALJ's finding at step five and remanded with an order that the Secretary award benefits.
 
 
 131
 17. Schneck v. Bowen, No. 88-0901, 1989 WL 109557 (M.D.Pa. Feb. 27, 1989). In this case, the Secretary sought and was granted a remand to develop further the evidence of plaintiff's alcoholism. The district court found a remand was appropriate since the record lacked "in depth" psychiatric records and since there was new evidence that plaintiff may have subsequently become gainfully employed, thus impacting upon his eligibility to receive benefits.
 
 
 132
 18. Jimenez v. Heckler, No. 84-0992 (E.D.Pa. Dec. 21, 1984). In this decision, the district court remanded the case to the Secretary for further review of plaintiff's alcoholism claim. The ALJ had found that plaintiff's alcohol abuse was not severe because it caused no significant tremors of his extremities. The district court remanded for evaluation of plaintiff's other symptoms of alcohol abuse.
 
 
 133
 19. Glenn v. Bowen, No. 88-3911, 1989 WL 60451 (E.D.Pa. June 5, 1989). This is the decision that the district court in Wilkerson II added to the eighteen cases the class provided. In Glenn, the district court found that the ALJ rejected plaintiff's alcoholism claim because he did not suffer from end-organ damage. The Appeals Council repudiated the ALJ's end-organ analysis and instead found that plaintiff was not addicted to alcohol. The district court found that substantial evidence did not support the Appeals Council's finding that plaintiff was not an alcoholic. Finding plaintiff to be an alcoholic, the district court ruled that he was unable to perform any substantial gainful activity and ordered the Secretary to award benefits.
 
 
 134
 It is apparent from this summary that these cases do not provide direct evidence of a refusal to follow McShea and Purter. Of these nineteen cases, in only three did the ALJ require a finding of end-organ damage as a prerequisite to awarding benefits for alcoholism. In two of these three cases, listed above as cases 1 and 5, the ALJ's decision preceded this Court's rulings in McShea and Purter. In the third case, listed above as case 19, the ALJ required end-organ damage after our decisions in McShea and Purter; however, SSA's Appeals Council corrected the ALJ's mistake and did not base its denial of benefits upon a finding of no end-organ damage. The class's reliance upon these nineteen cases seems grounded in its mistaken belief that the mere diagnosis of alcoholism qualifies a claimant for social security benefits.
 
 
 135
 Even if we were to agree with the district court that some of these reported alcoholism cases from the district courts within the Third Circuit demonstrate the Secretary's failure to appreciate or apply correctly our holdings in McShea and Purter,[18] they would, in and of themselves, be clearly insufficient to show that the administrative practice in alcoholism claims systematically contradicts the Secretary's explanation of the alcoholism regulation. There are two reasons why this is so. Not every district court adjudication of an alcoholism claim receives an opinion that is reported in the bound volumes or on the electronic services that contain district court decisions. District courts sometimes grant judgment in favor of the Secretary or a claimant in an order without opinion. Whether such adjudications generally uphold or reverse the Secretary's administrative denial of benefits or remand to an ALJ for development of a more complete record is unknown on the record before us. What is known is that the district court in this matter did not attempt to take such unreported adjudications into account. Without considering the larger and more representative sample of alcoholism claims adjudicated in this Circuit, the class's own informal survey of cases reported from 1983 to 1989 is insufficient to establish its contention that the Secretary's practice in handling alcoholism claims contradicts his proffered construction of the alcoholism regulation.[19]
 
 
 136
 Moreover, although these cases show the Secretary has sometimes erred in evaluating alcoholism claims, the evidence provides no basis for determining the rate of error. The disability case load that comes before the Social Security system is such that we need not dwell long upon a few reported decisions with holdings against the Secretary. These several errors fail to show, as a matter of law, that the Secretary is engaged generally in a pervasively lawless administrative practice. Recently, the Secretary has been deciding more than 2,000,000 claims for disability benefits each year. See Zebley, 110 S.Ct. at 888; Yuckert, 482 U.S. at 153, 107 S.Ct. at 2297. Under such conditions, a certain number of errors are to be expected. As the Supreme Court has recognized, the social security adjudicatory process is so large that "an acceptable rate of error" is the best that can be achieved. Califano v. Boles, 443 U.S. 282, 285, 99 S.Ct. 2767, 2770, 61 L.Ed.2d 541 (1979). Although the Court has not defined precisely the rate of error that is "acceptable" in processing social security claims generally, here it is not even possible to determine the Secretary's rate of error on the basis of the evidence submitted by the class.
 
 
 137
 In a system where efficiency in claim adjudication must be balanced against the need for correct determinations in individual cases, the Supreme Court has recognized that the cost of assuring that every single claim receives the proper administrative resolution would greatly decrease the amount of benefits available to those found to qualify. See id. at 284-85, 99 S.Ct. at 2769-70 ("A process of case-by-case adjudication that would provide a 'perfect fit' in theory would increase administrative expenses to a degree that benefit levels would probably be reduced, precluding a perfect fit in fact."); see also Mathews v. Eldridge, 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976) ("At some point the benefit of an additional safeguard to the individual affected by the administrative action and to society in terms of increased assurance that the action is just, may be outweighed by the cost.").
 
 
 138
 The survey evidence that the district court based its decision upon is not sufficient, taken alone or with the other evidence produced, to support the court's order granting judgment in favor of the class.[20] Taken together, that evidence shows only that some of the Secretary's subordinates have failed to follow the subtleties of his alcoholism regulation in making a difficult medical-legal determination in certain cases, perhaps because they continue to see through the clouded glass of distorted past practice.[21]
 
 
 139
 Since the district court's judgment fails to withstand scrutiny under either the plenary standard of review suggested by the Secretary or the more deferential clearly erroneous standard of review suggested by the class, we will reverse the district court's order granting judgment in favor of the class and will remand with instructions that the district court enter judgment in favor of the Secretary on these claims.
 
 VII.
 
 140
 The class, in its cross-appeal, challenges that portion of the district court's judgment holding that the Secretary did not violate the mandate of Sec. 5 of the Disability Reform Act of 1984, 42 U.S.C.A. Sec. 421 note (West Supp.1990). We will affirm this aspect of the district court's judgment.
 
 
 141
 Section 5 of the Reform Act provides, in relevant part:
 
 
 142
 (a) The Secretary of Health and Human Services ... shall revise the criteria embodied under the category "Mental Disorders" in the "Listing of Impairments".... The revised criteria and listings, alone and in combination with assessments of the residual function capacity of the individuals involved, shall be designed to realistically evaluate the ability of a mentally impaired individual to engage in substantial gainful activity in a competitive workplace environment.
 
 
 143
 42 U.S.C.A. Sec. 421 note.
 
 
 144
 The class maintained before the district court that the Secretary violated the mandate of this section of the Reform Act when he failed to adopt the alcoholism listing proposed by a workgroup that the Secretary commissioned.[22] Instead, the Secretary adopted Sec. 12.09, the alcoholism listing at issue in this appeal.
 
 
 145
 The district court rejected the class's claim, writing that "[t]he provision of the Disability Reform Act at issue here is general, so general that it would be almost impossible to violate it." Wilkerson II, 727 F.Supp. at 937.
 
 
 146
 As the district court correctly noted, in order to find that the Secretary has violated Sec. 5 of the Reform Act, the class would have to show that the Secretary's response to the mandate of the Reform Act was arbitrary and capricious. See Yuckert, 482 U.S. at 145, 107 S.Ct. at 2293; Heckler v. Campbell, 461 U.S. 458, 466, 103 S.Ct. 1952, 1956, 76 L.Ed.2d 66 (1983); see also Zebley ex rel. Zebley v. Bowen, 855 F.2d 67, 77 (3d Cir.1988) (finding that Secretary's interpretation of the Reform Act in that instance was not arbitrary and capricious), aff'd on other grounds sub nom. Sullivan v. Zebley, --- U.S. ----, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).
 
 
 147
 Here, we agree with the district court that the Secretary's adoption of his current alcoholism listing was not in violation of the mandate of Sec. 5 of the Reform Act. The district court was correct in noting that Congress chose to express its intention in enacting Sec. 5 of the Reform Act in very general terms. Furthermore, the Secretary properly points out that his workgroup's proposed alcoholism listing contained, in places, even more stringent standards for awarding benefits than the listing that the Secretary adopted in its stead.
 
 
 148
 Therefore, we hold that the Secretary's present alcoholism listing, which on its face is in conformity with the Social Security Act and the law of this Circuit, is not arbitrary or capricious so as to violate the mandate of Sec. 5 of the Disability Reform Act of 1984.
 
 VIII.
 
 149
 In sum, we will reverse the district court's order finding the Secretary's alcoholism listing void on its face and as applied and will remand with instructions to enter judgment in favor of the Secretary. Accordingly, we will also vacate the district court's remedial decree in its entirety.[23] We will affirm the district court's judgment holding that the Secretary did not violate the mandate of Sec. 5 of the Disability Reform Act of 1984. The Secretary's appeal at No. 89-1913 will be dismissed, and his petition at No. 89-1786 will be dismissed as moot. It is so ordered.
 
 
 
 [1]
 The parties agree that alcoholism is a particular form of substance addiction
 
 
 [2]
 The Federal Courts Study Committee has suggested that Congress prohibit deliberate agency non-acquiescence by amending the Social Security Act. See Report of the Federal Courts Study Committee 59-60 (1990). See also Weis, Agency Non-Acquiescence--Respectful Lawlessness or Legitimate Disagreement, 48 U.Pitt.L.Rev. 845 (1987)
 
 
 [3]
 The class presented its case on a theory that the Secretary willfully failed to follow the law and tried to mask that failure by a peculiarly drafted regulation. Although it also presented evidence that the Secretary often erred in his rulings on claims for alcoholic disability, the class did not produce evidence sufficient to show that the Secretary's regulation, as applied, leads to an unacceptable rate of error in administrative adjudication of claims for alcoholic disability. See infra at 850-51
 
 
 [4]
 From the record before us, it appears that this motion was the first time plaintiffs claimed that the Secretary had failed to follow the mandate of the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C.A. Sec. 421 note (West Supp.1990). See Jt.App., at 19
 
 
 [5]
 As its title implies, DSM-III-R contains the diagnoses for various mental disorders. The DSM-III-R diagnosis for alcohol dependence is "either a pattern of pathological alcohol use or impairment in social or occupational functioning due to alcohol, and either tolerance or withdrawal." Jt.App. at 367. In ordering the Secretary to use the DSM-III-R diagnostic definition of alcoholism in place of his current substance addiction listing, the district court in effect ordered the Secretary to provide social security benefits to every claimant who met the DSM-III-R diagnosis of alcoholism, without regard to the severity of the claimant's addiction
 
 
 [6]
 The order required the Secretary to take the following steps within the times indicated:
 
 
 [1]
 Within 15 days of the district court's order, issue provisional instructions for compliance with the order; plaintiffs' counsel shall approve instructions before dissemination
 
 
 [2]
 Within 30 days of the order, issue final instructions
 
 
 [3]
 For the first 60 days of the order, use the criteria for Substance Addiction Dependence of the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-III-R) (3d ed. 1987), to determine disability due to alcoholism
 
 
 [4]
 At the end of 60 days after the order, retain the DSM-III-R criteria or adopt a new regulation to determine disability due to alcoholism that complies with the law of the Third Circuit
 
 
 [5]
 Within 60 days of the order, identify all class claimants and locate all claim files and
 a. within seven days of making a determination of class membership (67 days after the order) send the files to the appropriate level of readjudication process;
 b. within seven days of receipt of those files sent to State Disability Determination Bureaus (DDB), request necessary information for readjudication of claims denied at initial or reconsideration stages where claimant had not requested review before an administrative law judge (ALJ);
 c. within 28 days of receipt of file at DDB and evidentiary development, complete the evaluation of disability;
 d. within 60 days of receipt of file at ALJ level, hold hearing;
 e. within 60 days of when claimant elects remand from Social Security Appeals Council to ALJ, hold hearing;
 f. within 60 days of election of remand from district court to ALJ, hold hearing;
 
 
 [6]
 Within 60 days of the order, distribute to class members appropriate notices developed by plaintiffs regarding readjudication of claims under the new alcoholism standard
 
 
 [7]
 Within 120 days of the order, issue a final regulation
 
 
 [8]
 Within 120 days of the order (and supplemented every 90 days thereafter), provide plaintiffs' counsel with: list of the names and social security numbers of class members who have been identified; current stage of the administrative process for each; and the results of redetermination for each class member. Also, provide counsel on five days' notice an adequate sampling of case files and determinations at any stage of the redetermination process. Also, within 10 days of determining that an individual is not a class member, provide counsel with that person's file
 
 
 [9]
 Within 180 days of the order (and supplemented every 90 days thereafter), provide counsel with the names and social security numbers of those who could not be notified because their notices were returned by the post office
 See Wilkerson II, 727 F.Supp. at 938-41 (order).
 
 
 [7]
 The district court may have confused a secret policy of non-compliance in Circuit law with a willful policy of non-acquiescence. A secret policy permits tolling of the time in which to seek judicial review of a denial of benefits. See Bowen v. City of New York, 476 U.S. 467, 480-81, 106 S.Ct. 2022, 2030-31, 90 L.Ed.2d 462 (1986). On the other hand, non-acquiescence in Circuit law involves a determination by the agency that it will refuse to follow judicial decisions it believes are not consistent with either the statute or validly adopted agency regulations. Because the district court's remedial order required the Secretary to reconsider claims of persons who had failed to pursue their judicial remedies within the prescribed period of limitations, we believe the court must have determined that the Secretary's regulation disguised his refusal to follow the law of this Circuit
 
 
 [8]
 The definition of substance addiction disorders that the Secretary adopted was "[b]ehavioral changes or physical changes associated with the regular use of substances that affect the central nervous system." 20 C.F.R. Part 404, Subpart P, Appendix 1 (Part A), Sec. 12.09
 
 
 [9]
 The Secretary's second notice of appeal stated, in relevant part:
 Notice is hereby given that ... the Secretary ... hereby appeals to the United States Court of Appeals for the Third Circuit from that part of the order entered on October 11, 1989, by the United States District Court for the Eastern District of Pennsylvania (Hon. John B. Hannum, Senior Judge) in the above-captioned case which denies the [Secretary's] Motion to Vacate the Court's Order of September 25, 1989, Granting Plaintiffs' Motion to Quash [the Secretary's] Rule 59(e) Motion for Reconsideration.
 Jt.App. at 699.
 
 
 [10]
 Although the class moved for a permanent injunction, as opposed to summary judgment per se, the district court wrote that the two were indistinguishable for these purposes. See 727 F.Supp. at 936 n. 11
 
 
 [11]
 The class defines alcoholism as a mental illness. This is in accord with the definition of alcoholism contained in DSM-III-R and consistent with the Secretary's regulatory scheme
 
 
 [12]
 In Zebley, the Supreme Court affirmed this Court's judgment in Zebley ex rel. Zebley v. Bowen, 855 F.2d 67 (3d Cir.1988). In that decision, we held that it was a violation of the Social Security Act for the Secretary to base a child's disability determination solely upon the listings at step three
 We note, however, that Congress has chosen a disability standard for widows and widowers who apply for SSI or SSDI benefits that is stricter than the standard applicable to other adults and children. See 42 U.S.C.A. Sec. 423(d)(2)(B) (West Supp.1990). Under the statute, a widow or widower must show that his or her disability prevents the performance of any gainful activity in order to qualify for benefits. The Secretary has implemented this statutory provision in such a way that a widow or widower who does not match or equal the listings at step three of the sequential evaluation process will not be found to be disabled.
 The First, Second and Eighth Circuits, however, have each rejected the Secretary's construction as contrary to the clear meaning of the statute. See Cassas v. Secretary of Health & Human Servs., 893 F.2d 454, 457-59 (1st Cir.1990) (Secretary must evaluate widow's disability claim at steps four and five of sequential evaluation process when widow fails to match or equal listing at step three); Kier v. Sullivan, 888 F.2d 244, 246-47 (2nd Cir.1989) (same); Paris v. Schweiker, 674 F.2d 707, 709-10 (8th Cir.1982) (same). But see Willeford v. Secretary of Health & Human Servs., 824 F.2d 771, 773-74 (9th Cir.1987) (Kennedy, J.) (upholding Secretary's denial of benefits to widow who failed to match or equal step three listings); Dorton v. Heckler, 789 F.2d 363, 365-67 (6th Cir.1986) (per curiam) (same). This Court has yet to confront this exact issue, although it was presented in Finkelstein v. Bowen, 869 F.2d 215 (3d Cir.1989), cert. granted, --- U.S. ----, 110 S.Ct. 862, 107 L.Ed.2d 947 (1990). We dismissed that appeal for lack of jurisdiction.
 
 
 [13]
 The full text of the nine listings referenced in Sec. 12.09 is contained in footnote 8 of the district court's decision in Wilkerson II. See 727 F.Supp. at 929 n. 8
 
 
 [14]
 Only those cross-references contained in the mental disorders section, namely cross-references A through D, have capsule definitions
 
 
 [15]
 The Secretary does admit that two of the eighteen district court cases were administratively decided in violation of McShea and Purter
 
 
 [16]
 The class has maintained that the significance of this deposition testimony is predicated upon the similarity between social security alcoholism law in the Third and Ninth Circuits. It is therefore important to note that the Ninth Circuit has already rejected the class's argument that the mere diagnosis of alcoholism is sufficient to entitle a social security claimant to benefits. See Clem v. Sullivan, 894 F.2d 328, 331 (9th Cir.1990). In Clem, the claimant, who was denied benefits, argued that his status as a diagnosed alcoholic discharged his burden at step four of the sequential evaluation process to prove that he was unable to perform his prior work. See id. The Ninth Circuit disagreed and affirmed the Secretary's denial of benefits, writing that "a mere showing that the claimant is a diagnosed alcoholic is not sufficient to shift the burden of proof" for entitlement to benefits at step four from the claimant to the Secretary. Id. at 332
 
 
 [17]
 The class pointed to 18 cases in the district courts. See Wilkerson II, 727 F.Supp. at 932 n. 9. The district court added one case of its own, bringing the total to 19. See id. at 933. The class also produced 15 administrative decisions. See Jt.App. at 41-309
 
 
 [18]
 We do not think that some of the cases cited by the class (i.e. cases 2, 7, 8, 10, 11, 14, 15, 16 and 17) provide any support for the class's position, since they either do not show a violation of McShea or Purter or were decided administratively before McShea and Purter became the law of this Circuit
 
 
 [19]
 The class contended at oral argument that our decision in Bennett v. White, 865 F.2d 1395 (3d Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 3247, 106 L.Ed.2d 593 (1989), precludes the Secretary from arguing that the sample of cases the district court relied upon was unrepresentative. In Bennett, we found that the defendant, Pennsylvania's Secretary of the Department of Public Welfare, obstructed plaintiffs' access to a more representative sample of cases through shoddy recordkeeping and failure to obey discovery requests. Since the Welfare Department was itself to blame for plaintiffs' failure to produce a more representative sample, we held that the Welfare Department could not be heard to complain of the consequences. 865 F.2d at 1401
 In this appeal, the class has not attempted to show that the Secretary has obstructed its ability to collect a representative cross-section of alcoholism disability adjudications conducted within this Circuit. Therefore, under Bennett, the class cannot avoid its responsibility of providing a representative sample when it relies on such a survey.
 
 
 [20]
 The 15 administrative decisions cited by the class, two of which were the subject of separate district court decisions summarized above, suffer from the same evidentiary defects as the reported decisions that the class relies upon. Therefore, we decline the parties' invitation to referee their dispute over the propriety of the administrative holdings in those cases
 
 
 [21]
 We think the Secretary could improve his efficiency in adjudicating this type of claim by clarifying his listing for substance addiction and by taking steps to advise his subordinates that the former practice is no longer in accord with law. By doing so, we think he could reduce the risk of further litigation similar to this
 
 
 [22]
 The workgroup proposed the following listing:
 
 
 [12]
 09 Substance Addiction Disorders (Behavioral changes associated with the regular use of substances that affect the central nervous system). With A and B: A. Medically documented pattern of pathological use of alcohol or other substances with all of the following: 1. Inability to control use of or stop taking the substance. 2. Daily use of substance with frequent intoxication. 3. The development of marked withdrawal symptoms after cessation of or reduction in substance use. B. Resulting in persistence of three of the following: 1. Marked restriction of activities of daily living. 2. Marked difficulties in maintaining social functioning. 3. Deficiencies of concentration and persistence resulting in frequent failure to complete tasks (in work settings or elsewhere). 4. Repeated episodes of deterioration or decompensation in work or work-like situations, which require the individual to withdraw from that situation and/or to experience exacerbation of signs and symptoms
 Jt.App. at 353 n. 20.
 
 
 [23]
 As a result of our holding that the Secretary's alcoholism listing is valid on its face and as applied, it is unnecessary to discuss the issues raised in connection with the district court's remedial order