**James H. JONES, Appellant,**

**v.**

**Louis W. SULLIVAN, Secretary of Health and Human Services.**

No. 91–1543.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Dec. 10, 1991.

Decided Dec. 16, 1991.

Eric J. Fischer, Fischer & Walkenhorst, Jenkintown, Pa., for appellant.

Michael M. Baylson, U.S. Atty., David F. McComb, Asst. U.S. Atty., E.D. of Pa., Philadelphia, Pa., Eileen Bradley, Chief Counsel, Region III, Margaret Krecke, Asst. Regional Counsel Appellate Staff, Deborah Fitzgerald, Asst. Regional Counsel, Office of the Gen. Counsel Dept. of Health and Human Services, Philadelphia, Pa., for appellee.

Before BECKER, GREENBERG and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

After the Department of Health and Human Services rejected appellant James H. Jones's petition for social security benefits, Jones sought to review that action in the District Court for the Eastern District of Pennsylvania. The District Court granted summary judgment in favor of the Secretary of Human Services and Jones appeals. Because we find that the decision by the Department of Human Services was supported by substantial evidence and properly applied the relevant laws and regulations, we will affirm.

### I.

On September 13, 1988, James H. Jones filed an application with the Department of Health and Human Services of the Social Security Administration in Philadelphia (the "Department") for disability insurance benefits and Supplemental Security Income. Jones alleged that high blood pressure, a heart condition, a back problem and various related ailments had disabled him since January 2, 1986 and prevented him

from continuing his past work as a security guard or procuring any other job.[1]

The Department denied Jones's application both initially and on reconsideration. The Department predicated its denials on an initial finding, and a finding upon reconsideration, that Jones was not disabled within the meaning of the Social Security Act. The Department explained its decision to Jones as follows:

You said that you are unable to work because of high blood pressure, a heart condition and a back problem. You do have some limitation of back movement. However, you can stand and walk and use your hands. Your blood pressure is controlled without complications. You have some chest pains at times, but no evidence of a severe heart condition.

Based on your age, education and description of the job you performed as a security guard for fifteen years, we have concluded that you have the ability to return to this job.

(Tr. 93–94).

Jones's case was considered *de novo* by an administrative law judge ("ALJ"). After a hearing, the ALJ issued an opinion on December 20, 1989 denying benefits on the grounds that Jones retained a residual capacity for at least light work activity. (Tr. 32). Although Jones's treating physicians characterized Jones as totally disabled, the ALJ dismissed that characterization as inconsistent with those doctors' own records and the weight of the medical evidence. (Tr. 30).

In addition to rejecting the medical claims that Jones had raised in his petition for benefits, the ALJ found no evidence that Jones currently abused alcohol[2] or that he had ever abused alcohol to such an extent that it interfered with his employment. The ALJ also rejected the suggestion that Jones's age of 56 substantially limited his ability to obtain work.

The Secretary of Health and Human Services (the "Secretary") adopted the Administrative Law Judge's opinion. On May 30, 1990, the Appeals Council of the Department denied Jones's request for review of the ALJ's decision. On July 5, 1990, Jones's attorney sent the Appeals Council a medical report indicating that Jones had been hospitalized from January 17, 1990 to January 24, 1990 for pancreatitis and hepatitis. The Appeals Council, noting that Jones's symptoms during that hospital stay had been quickly resolved and that Jones had been released from the hospital in good condition, refused to reopen the case on the basis of this new evidence. (Tr. 3).

Jones then filed an action in the United States District Court for the Eastern District of Pennsylvania seeking review of the Secretary's decision to adopt the ALJ's opinion. On May 29th, 1991, the District Court granted summary judgment in favor of the Secretary. The District Court did not accompany its summary judgment order with a written opinion.

Jones appeals to this Court and argues that (1) the Secretary admitted in his district court brief that Jones continues to be a heavy drinker, thus discrediting the ALJ's determination that Jones did not satisfy the requirements for alcoholism disability; (2) the ALJ had improperly rejected the opinions of Jones's treating physicians regarding Jones's disability and pain, and had relied instead on lay observations; and (3) the ALJ ignored regulatory age criteria that define the age of 55 as "advanced age ... significantly affect[ing] a person's ability to do substantial gainful activity." Finally, Jones argues that the District Court should not have affirmed the Department's decision without providing a written explanation for its affirmance.

■ Our standard of review in this case is whether there is substantial evidence in the record to support the Secretary's deci-

---

1. Jones had worked as a sheet metal fabricator between 1954 and 1968, as a bricklayer's helper in 1968, and as a security guard between 1970 and 1985. In 1987, he apparently worked ten or eleven months for a beer distributor and also worked for several months as a security guard.

2. The ALJ pointed out that none of the reports of Jones's doctors indicated that Jones required treatment for alcohol abuse; further, Jones had testified at the hearing that he had stopped drinking.

sion. *See Brown v. Bowen*, 845 F.2d 1211 (3d Cir.1988).

## II.

### A.

■ Jones first contends that the Secretary's admission that Jones continues to abuse alcohol discredits the ALJ's determination that Jones failed to satisfy the requirements for alcoholism disability. The assumption underlying Jones's argument is that alcoholics are incapable of maintaining gainful employment. While we do not doubt that alcoholism may cause work difficulties and may constitute a compensable injury, we recently refused to create a presumption that a mere diagnosis of alcoholism, without more, renders an applicant eligible for benefits under the Social Security Act. In *Petition of Sullivan*, 904 F.2d 826 (3d Cir.1990), we explained that:

> Not all persons whose abuse of alcohol has progressed to the point that they are unable to control their drinking are incapable of any gainful employment.... Were we to accept the ... argument that the disability inquiry should end ... upon the mere diagnosis of alcoholism, persons afflicted with this addictive disorder would be relieved of showing that their affliction was severe enough to preclude substantial work. An award of disability benefits without such a showing would ... contradict Congress's intent in limiting disability benefits under the Social Security Act only to those who are unable to perform substantial gainful activity.

*Id.* at 845.

The ALJ received no evidence whatsoever that Jones abused alcohol to the point where the abuse interfered with Jones's ability to hold a job. Jones himself, when testifying at his hearing, never alleged that his drinking affected his work in any way. We are therefore satisfied that substantial evidence supported the ALJ's determination that alcohol consumption did not preclude Jones from performing substantial gainful activity.

### B.

■ Jones's counsel has attempted to introduce new evidence into the record regarding Jones's January, 1990 hospitalization. Because this evidence was not before the ALJ, it cannot be used to argue that the ALJ's decision was not supported by "substantial evidence." *See United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715, 83 S.Ct. 1409, 1414, 10 L.Ed.2d 652 (1963) ("a decision may be supported by substantial evidence even though it could be refuted by other evidence that was not presented to the decision-making body").

Under 42 U.S.C. 405(g), we may remand this case to the Secretary for consideration of the new evidence if we find that the new evidence is material and that there is good cause for Jones's failure to incorporate this evidence into the record in the prior proceedings. After careful consideration of this evidence, we find it to be immaterial. We have no reason to disagree with the Appeals Counsel which, when refusing to reopen the case on the basis of this evidence, noted that Jones's symptoms during his January, 1990 hospital stay had been quickly resolved and that Jones had been released from the hospital in good condition. (Tr. 3). Further, Jones's counsel has provided no satisfactory explanation why his May 10, 1990 brief in support of his request for Appeals Council review failed to mention the January, 1990 hospital stay to which he now attaches such importance.

### C.

■ Jones next argues that the law of this Circuit required the ALJ to adopt the judgment of Jones's treating physicians, who opined that Jones's illnesses prevent him from maintaining gainful employment and cause him severe pain. Jones claims that the ALJ substituted the ALJ's own lay observations of Jones's condition for the findings of Jones's treating physicians, thus violating *Frankenfield v. Bowen*, 861 F.2d 405 (3d Cir.1988). In *Frankenfield*, we established that, in the absence of contradictory medical evidence, an ALJ in a social security disability case must accept

the medical judgment of a treating physician.

However, the opinions offered by Jones's treating physicians were conclusory and unsupported by the medical evidence, and failed to explain why ailments that had plagued Jones for decades did not incapacitate him until 1987. Further, these opinions were not uncontradicted. After Jones applied for reconsideration of the initial rejection of his claim, two physicians in the state agency evaluated the medical findings of Jones's treating physicians and concluded that those findings did not reveal any condition that would preclude gainful employment. In light of such conflicting and internally contradictory evidence, the ALJ correctly determined that the opinions of Jones's treating physicians were not controlling. *See, e.g., Wright v. Sullivan,* 900 F.2d 675, 683 (3d Cir.1990); *Newhouse v. Heckler,* 753 F.2d 283, 286 (3d Cir.1985).

## D.

 Jones claims that the ALJ's finding that Jones's ailments impaired his ability to walk, stand, lift or bend belied the ALJ's conclusion that Jones "has the residual functional capacity" to return to his former job. Jones apparently favors a presumption that physical impairment necessarily precludes the maintenance of substantial gainful employment.

However, such a presumption would conflict with the regulatory scheme for determining whether a claimant is disabled, under which the determination of whether a claimant is severely impaired precedes a separate determination of whether the claimant, despite his severe impairment, retains the ability to perform substantial gainful activity. The Secretary's regulations provide that a claimant will be considered disabled and receive benefits only if the claimant demonstrates that (1) he is not currently engaged in any substantial gainful activity; (2) he is severely impaired; and either (3) his impairment is listed in 20 C.F.R. pt. 404, subpt. P, App. 1, in which

case he is presumptively disabled, or (4) his impairment prevents him from meeting the physical and mental demands of the kind of job that he has held in the past, and (5) his impairment together with his age, education, and past work experience also prevents him from doing any other sort of work. *See* 20 C.F.R. § 404.1520.

The ALJ found Jones to be unemployed and severely impaired and thus not precluded from receiving benefits by steps 1 or 2. Under step 3, the ALJ found that Jones's ailments did not meet or equal any of the medical impairments listed in 20 C.F.R. pt. 404, subpt. P, App. 1. The ALJ therefore proceeded to step 4. Under step 4, the ALJ concluded that Jones retained the residual functional capacity to return to his past work and that Jones was therefore not entitled to benefits.

The structure of this five-step process, in which a finding of severe impairment necessarily precedes any analysis of residual work ability, demonstrates that the ALJ's determination that Jones was severely impaired could not be said to necessarily preclude the ALJ's conclusion that Jones, though severely impaired, could nevertheless work and earn a salary. In performing the step 4 analysis, the ALJ placed great weight on the fact that most of Jones's ailments date back many years and yet did not prevent him from maintaining employment as a security guard. Based as it was on substantial evidence in the record, the ALJ's conclusion regarding Jones's ability to return to his former employment was not clearly erroneous.

## E.

 Next, Jones argues that the ALJ misconstrued the regulatory age classifications. The ALJ, noting that Jones managed to obtain and perform work as recently as 1987, concluded that Jones's age would not prevent him from acquiring a similar job in 1989.[3] Jones argues on appeal that the ALJ improperly ignored the

**3.** As stated in note 1, *supra,* Jones worked during 1987 for a beer distributor and as a security guard.

**130**

regulatory provision that "advanced age (55 or over) is the point where age significantly affects a person's ability to do substantial gainful activity." 20 C.F.R. § 404.-1563(d). According to Jones, his ability to work in 1987, when he was 53 years old, should not have been utilized to estimate his ability to work at the "advanced" age of 56.

We did announce in *Velazquez v. Heckler*, 802 F.2d 680 (3d Cir.1986), that the Secretary must consider a claimant's age when determining whether the claimant qualifies for disability benefits. However, we have never held that the regulatory age classifications creates an irrebuttable presumption that a person's ability to work drops precipitously upon his reaching the age of 55. Many people over the age of 55, including many handicapped people, find and maintain steady jobs. The ALJ did not err in determining, in light of the present record, that an ability to work at the age of 53 may evince an ability to perform the same work two or three years later.

■ Finally, Jones argues that the District Court should have provided a written opinion explaining its decision to grant summary judgment in favor of the Secretary. Jones concedes that district courts need not write opinions every time they issue summary judgment Orders in Social Security cases, but suggests that "an enunciated rationale *is* necessary in those cases, like ours, where the record fails to plainly support the district court's Order." Brief of the Appellant at 36–37 (emphasis in the original). Because we find that the record supports the district court's Order in this case, we reject Jones's suggestion and hold that the District Court was not required to accompany its Order with a written opinion.[4]

4. In *Vadino v. A. Valey Engineers*, 903 F.2d 253 (3d Cir.1990), we held that district courts must accompany grants of summary judgment with an explanation "sufficient to permit the parties and this court to understand the legal premise for the court's order." *Id.* at 259. However, as Jones acknowledges, the *Vadino* rule applies only to cases in which the district court acts as a trial judge and not to cases where the district court reviews the decision of an administrative agency. We premised the *Vadino* rule on our inability to review a district court's ruling without some articulation of that court's reasoning. In administrative cases such as the present one, however, where we have the benefit of the ALJ's findings and opinion, *Vadino* and the supervisory rule promulgated in *Vadino* are inapposite.

III.

We will affirm the Order of the District Court granting summary judgment in favor of the Secretary.