89 F.3d 838
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
John W. LENNON, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 95-3931.
 United States Court of Appeals, Seventh Circuit.
 Argued June 12, 1996.
Decided June 25, 1996.
 
 Before FLAUM, RIPPLE and ROVNER, Circuit Judges.
 
 Order
 
 1
 John Lennon applied for Social Security Disability Insurance Benefits (DIB) in 1992, claiming that he was unable to work due to depression. Lennon last worked in 1981 and his eligibility for Social Security benefits expired on December 31, 1985. Thus, in order to claim Social Security benefits, he had to show that his disability occurred in or before 1985. An administrative law judge (ALJ) determined after a hearing that Lennon did not suffer from a disability on or before the date his benefits expired. The Appeals Council denied Lennon's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security, and the district court affirmed the ALJ's finding. Because the ALJ's decision rests on substantial evidence, we affirm the district court's decision.
 
 I. Relevant Facts
 
 2
 The plaintiff was born in 1952 as Lawrence Hanlin; he changed his name to John Lennon in 1983. He completed high school and two years of junior college. He has held a number of jobs, including parts picker (a person who selects parts from a warehouse to fill orders, see U.S. Dep't of Labor, Dictionary of Occupational Titles 922.687-058 (4th ed. 1991)), mechanic, sales clerk and night watch guard. He last worked in June 1981 as a janitor; it is unclear from the record whether he was fired or quit.
 
 
 3
 In mid-1981, Lennon began seeing Dr. Steven Chang for depression. Dr. Chang hospitalized Lennon for depression five times between June 1981 and February 1982, with stays lasting two weeks to a month. Dr. Chang saw Lennon through March 1982, but did not see him again until 1992.
 
 
 4
 In 1985, Lennon received an inheritance worth $250,000 from his grandmother. He invested some of that money in several houses which he intended to improve and sell, but lost money on them. Lennon lost the remainder of his inheritance through gambling, reckless spending, and giving away money. According to Lennon's own witness at the Administrative Hearing, "For someone who has not worked since 1980 [sic], he was always driving brand new cars, he was always fixing up houses, he was spending money freely."
 
 
 5
 In 1992, Lennon again sought psychiatric treatment, first from Dr. E.J. Ritterhoff, and then from Dr. Chang. Lennon filed for DIB on April 27, 1992, claiming that he became disabled on June 30, 1981--the day he ceased working at his last job. The Social Security Administration denied his application and his request for reconsideration. Lennon then sought a hearing before an ALJ. Three witnesses testified at the hearing: Lennon, Debbie Wuerzberger (a friend of Lennon's), and Jack Reynolds (a vocational expert). The ALJ ruled against Lennon, the Appeals Council denied his request for review, and the district court upheld the ALJ's decision. This appeal followed.
 
 II. Analysis
 
 6
 Lennon's eligibility for Social Security Benefits expired on December 31, 1985. Thus, the relevant question is whether he became disabled at or before that time. At his hearing before the ALJ, Lennon presented his own testimony, that of Wuerzberger, and a written statement from Dr. Chang to support his claim that he became disabled in 1981; the ALJ nonetheless determined that he had not. On appeal, Lennon makes two arguments: first, that the ALJ improperly discounted Dr. Chang's opinion that Lennon became disabled in 1981, and second, that the ALJ's determination was not supported by substantial evidence in the record.
 
 A. Dr. Chang's Opinion
 
 7
 Lennon first contends that the ALJ failed to accord proper weight to Dr. Chang's opinion. Dr. Chang submitted a written statement in June 1993 that reads--in it entirety--"It is my professional opinion that [Lennon] became disabled in 1982 [sic] when he was fired from [his last job]." Lennon argues that there is no contrary medical evidence to refute Dr. Chang's position, and that the ALJ was therefore obligated to accept Dr. Chang's determination both that he was disabled and as to the date of the disability's onset.
 
 
 8
 Lennon misunderstands Dr. Chang's role. Whether Lennon was clinically depressed is a medical determination as to which the ALJ must give due weight to Dr. Chang's opinion. (Indeed, apparently no one in this case denies that Lennon was depressed.) But whether that depression constituted a disability within the meaning of the Social Security Act[1] is a legal determination for the ALJ to make. Dray v. Railroad Retirement Bd., 10 F.3d 1306, 1313 (7th Cir.1993). Not all cases of depression constitute a disability. As the ALJ noted, Dr. Chang's use of the word "disabled" did not necessarily comport with the meaning of that term in the context of Social Security disability proceedings.[2] Thus, the ALJ was free to accept Dr. Chang's medical opinion that Lennon was severely depressed without accepting Dr. Chang's legal conclusion that this depression amounted to a "disability" within the meaning of the Social Security Act.
 
 
 9
 Additionally, even to the extent that Dr. Chang could testify to the limitations Lennon's mental illness caused him, Dr. Chang's assertion is the epitome of a conclusory statement, and therefore properly given little weight. Jones v. Sullivan, 954 F.2d 125, 128-29 (3rd Cir.1991); see also Leggett v. Chater, 67 F.3d 558, 565-66 (5th Cir.1995); Metz v. Shalala, 49 F.3d 374, 377 (8th Cir.1995). Dr. Chang offers absolutely no explanation as to how he reached this conclusion, on what factors he based his "professional opinion," or what standards he used to make his determination that Lennon was disabled. Lennon submits that a slightly more detailed letter Dr. Chang wrote in May 1993 indicates that the latter "thoroughly reviewed his records, notes and prior written reports before rendering his opinion." But this amounts to no more than an argument that Chang must have had a good basis for rendering his conclusory statement; it doesn't make the statement any less conclusory. Thus, the ALJ properly gave Dr. Chang's opinion--even if uncontradicted--little weight.
 
 
 10
 Most importantly, the ALJ noted that although Dr. Chang treated Lennon in 1981-1982, he never rendered an assessment at that time that Lennon was unable to work. It was only a decade later that Dr. Chang offered that opinion. The ALJ was entitled to rely on the absence of contemporaneous evidence in the record to reject Dr. Chang's ex post facto opinion.
 
 
 11
 Accordingly, there is no merit to Lennon's claim that the ALJ improperly discounted Dr. Chang's opinion.
 
 B. Substantial Evidence in the Record
 
 12
 Lennon's second claim on appeal is that the ALJ lacked substantial evidence on which to base his opinion that Lennon was not disabled. But Lennon makes three analytical errors in his argument on this issue. First, as noted above, Lennon incorrectly equates severe clinical depression with a disability within the meaning of the Social Security Act. The relevant issue, however, is whether his depression was so severe that he was unable to engage in any "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).
 
 
 13
 Second, Lennon ignores that the only relevant period is in or before 1985. Much of the evidence he cites in support of his claim is medical testimony from 1992 regarding his then-current condition. Although Lennon refers to the statements of a doctor and Wuerzberger that his condition had been the same for more than a decade, the ALJ was entitled to give little weight to these vague, conclusory statements. More importantly, there was (as discussed below) substantial evidence on which the ALJ could find that Lennon was not disabled even in 1992, and thus, to the extent that Lennon's condition remained unchanged for a decade, the ALJ could conclude that Lennon was not disabled between 1981 and 1985.
 
 
 14
 Finally, under the standard of review this court employs in Social Security cases, it does not matter if there is compelling evidence--or even a preponderance of evidence--to support Lennon's position. Unless the ALJ has committed an error of law, his determination that Lennon was not "disabled" for the purpose of receiving Social Security benefits is conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); Howell v. Sullivan, 950 F.2d 343, 347 (7th Cir.1991). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Diaz v. Chater, 55 F.3d 300, 305 (7th Cir.1995). Affirmance is mandatory even if substantial evidence also supports the opposite conclusion. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (en banc); see also Diaz, 55 F.3d at 305-06.
 
 
 15
 Contrary to Lennon's assertion, there is substantial evidence in the record to support the ALJ's determination that Lennon was not disabled in or before 1985. When Dr. Chang last discharged Lennon from the hospital in 1982, he noted that the latter had undergone "mild improvement from severe depression" and that "obsessive rumination about his wife and probation [were] minimized." Lennon discontinued psychiatric treatment in 1982 and did not seek treatment again until 1992, although his inheritance certainly gave him the financial ability to obtain treatment. Based on Lennon's decision not to continue seeking psychiatric treatment in 1982, the ALJ could conclude that Lennon was not so depressed as to be disabled.[3]
 
 
 16
 Furthermore, the evidence of Lennon's life from this period belies his claim that he was disabled to the point of being nonfunctional. Lennon and Wuerzberger testified that between 1981 and 1985, Lennon read and watched television, socialized with other people, ate out, and dated; in 1985, his girlfriend moved in with him. Based on these factors, the ALJ concluded that "[Lennon's] activities of daily living ... were not so restrictive as to indicate an existence of disabling impairments."
 
 
 17
 Moreover, Lennon's disposal of his inheritance--while by no means wise--shows that he was not depressed to the point of incapacitation. Lennon invested in houses with the intent of improving them and selling them for a profit. He drove new cars and spent his money freely; he gave money away and he gambled. However impulsive or compulsive this behavior may have been, it was the ALJ's province to determine that this evidence indicated that Lennon was not disabled within the meaning of the Social Security Act.
 
 
 18
 Finally, Jack Reynolds--a vocational expert, and hence, the person most qualified to determine whether Lennon could work at some jobs despite his psychological limitations--testified that there were a number of jobs similar to those at which Lennon worked in the past at which Lennon could still work. This testimony, coupled with the reports from a number of doctors and mental health care workers that "[Lennon] indicated it was difficult to think of working for minimum wage and felt this was a waste of time," that "[h]e is convinced that he cannot manage himself and that he needs to go on Social Security," and that "[Lennon] enters at this time stating he wishes to apply for Social Security Disability," provided substantial evidence upon which the ALJ could have concluded that Lennon could work--and hence was not disabled as defined by the Social Security Act--but had chosen instead to seek DIB.
 
 
 19
 There is thus substantial evidence in the record to support the ALJ's determination.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 The Social Security Act defines a disability as "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505
 
 
 [2]
 In a May 1993 letter, Dr. Chang did state that "[Lennon] is in no condition to be gainfully employed and probably no one will hire him." But these statements are utterly conclusory and there is nothing in the record to suggest that Dr. Chang was competent to make these vocational--as opposed to medical--assessments. Moreover, Dr. Chang was referring to Lennon's condition in 1993 rather than his condition between 1981 and 1985
 Finally, and most importantly, the Social Security Act limits the definition of a disability to the inability to "engage in ... substantial gainful work which exists in the national economy, regardless of whether ... a specific job exists for [the applicant], or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). Thus, to the extent that the May letter sheds any light on what Dr. Chang meant by "disabled" in the June letter, it indicates that Dr. Chang did not use that term within the meaning of the Social Security Act.
 
 
 [3]
 Admittedly, one could draw the opposite inference: that Lennon was so depressed that he was incapable even of continuing treatment. But that is a credibility determination that this court cannot re-visit. Edwards v. Sullivan, 985 F.2d 334, 338 (7th Cir.1993)