Donald B. CLARK, Appellant,

v.

SOCIAL SECURITY
ADMINISTRATION.

No. 01–3011.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) Feb. 12, 2002.

Filed April 23, 2002.

Before McKEE and BARRY, Circuit
Judges.

OPINION OF THE COURT

McKEE, Circuit Judge.

Donald B. Clark appeals the decision of
the United States District Court for the
Eastern District of Pennsylvania granting
summary judgment to the Commissioner
of Social Security in Clark's suit for bene-
fits under Title II of the Social Security
Act. See 42 U.S.C. §§ 401–433. For the
following reasons, we will affirm the deci-
sion of the district court.

I.

Clark was born on November 26, 1955,
and was forty-two years old when he filed

his claim. He had a high school education and had worked as an automobile mechanic. In December 1991, he injured his back while at work. Clark sought chiropractic treatment, and continued to work until August 10, 1992, when he re-injured his back. He has not worked since that date.

On August 26, 1992, Randal N. Smith, M.D., an orthopedic surgeon, examined Clark because of Clark's complaints about mid-lower back pain. Clark's back x-rays showed some signs of scoliosis, some degenerative changes, some spondylolisthesis, and some discogenic disease was evident throughout his dorsal and lumbar spine. Dr. Smith also observed that Clark had poor muscle tone in his back. Clark is a large individual; nonetheless, there was no evidence of any neurological deficit. Smith recommended that Clark begin an exercise program at a health spa, change jobs or change the circumstances of his current job to lessen the load on his back, and attend back school.

Clark has been examined repeatedly by Dr. Clark and other physicians since the date of his injury. X-rays of Clark's thoracic spine taken on September 30, 1995 revealed discogenic sclerosis and degenerative changes at the T10 T11 levels, but no evidence of any other abnormalities. X-rays of his lumbar spine showed mild degenerative changes at the L5 S1 level, but no other significant findings. X-rays of his thoracic spine taken in 1996 revealed minor generalized degenerative changes at multiple levels. An MRI on March 22, 1997, disclosed degenerative disc disease at multiple levels without significant bulging or herniation.

Clark also underwent neuropsychological testing. He was given a psychodiagnostic test by Dr. C.P. Eleftherios, a licensed psychologist, on October 22, 1992. Dr. Eleftherios diagnosed "psychological factors affecting physical condition and adjustment disorder (mixed)." Dr. Eleftherios rated Clark's prognosis as "Guarded" and recommended psychotherapy to assist his emotional discomfort.

Clark received workers' compensation benefits from the time of his re-injury until May 1995 when he and his former employer entered into a supplemental agreement for a commutation of benefits. In the agreement, Clark stated that he was capable of returning to the work force and limiting his loss of earning capacity solely as a result of this work related injury, and that he was currently pursuing additional employment prospects within his physical and vocational limitations.

Six months later, on December 18, 1995, he filed this application for Disability Insurance Benefits. The claim was denied by the Commissioner on February 18, 1996, and a hearing was subsequently held on July 8, 1997. The Administrative Law Judge remanded the matter to the Commissioner for a psychological consultative evaluation, and reconsideration on that basis. Following the evaluation, the Commissioner again denied Clark benefits on December 10, 1997. Clark again appealed to an ALJ, who convened a hearing on May 20, 1998. This hearing included an orthopedic medical advisor, Dr. Stanley Askin, and a vocational expert, Carol Rutherford. Based on the recommendations of Dr. Askin and Ms. Rutherford, the ALJ denied Clark's claim for benefits on June 27, 1998.

Clark thereupon commenced this civil action in the United States District Court for the Eastern District of Pennsylvania seeking judicial review of the Commissioner's final decision. The district court assigned the case to a Magistrate Judge who recommended that the district court grant the Commissioner's motion for summary judgment. The recommendation was approved, and this appeal followed.

## II.

Our review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 2305. See also *Monsour Medical Ctr. v. Heckler*, 806 F.3d 1185, 1190 (3d Cir.1986). Substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.1999).

Clark contends that he demonstrated a prima facie case for entitlement to disability benefits. He argues that this prima facie case cannot be rebutted by "citation to 'other' jobs provided in response to a vocational hypothetical question that fails to factor-in all of the claimant's impairments." Appellant's Br. at 20.

A hypothetical question to a vocational expert must accurately portray the claimant's physical and mental impairments, but it need reflect only those impairments that are supported by the record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir.1987). If such a question does not reflect the claimant's physical and mental impairments, "the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Id.*

Clark contends that the hypothetical question presented to the vocational expert here was deficient. He argues that the resulting opinion that Clark was capable of fulfilling sedentary work was not based on substantial evidence. Clark contends that the hypothetical and the ultimate decision are deficient in two aspects. First, Clark contends that the hypothetical question and the conclusions drawn from it were deficient because it ignored the psychological diagnoses of Drs. Kear and Eleftherios. Dr. Eleftherios' diagnosis of two mental conditions establishes that Clark was hy-

persensitive to stress, had increased perceptions of pain, and this explained his "lack of progress in treatment." (Tr. at 180–181.) Dr. Kear diagnosed Clark with a longtime, chronic depression/affective disorder, or disthymic disorder. Dr. Kear stated that this condition interacted with Clark's physical impairment to cause him further impairment. Clark contends that this was not accounted for in the ALJ's decision.

The Commissioner contends that the record contains no credible evidence that his situational depression was a severe impairment within the meaning of the Act or that he was limited in any way by a mental impairment. An impairment is considered severe if it significantly limits the individual's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1520(c) (2001); *Santise v. Schweiker*, 676 F.2d 925, 927 (3d Cir.1982). Basic work activities include the ability to understand, remember and carry out simple instructions; to use judgment; to respond appropriately to supervisors, co-workers, and usual work situations; and to deal with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(3)-(6).

The Commissioner points to Dr. Kear's statements in his diagnosis that Clark had the mental capacity to understand, remember and carry out simple job instructions. (Tr. at 249–50). The Commissioner also points to the testimony of Dr. Kowalski, the agency psychiatrist whom the ALJ asked to evaluate Clark's claim. Dr. Kowalski reviewed Dr. Kear's report and testified, notwithstanding Dr. Kear's final diagnosis, that Clark did not have a severe mental impairment. (Tr. at 251, 258.)

The Commissioner also contends that Clark presented no evidence that his depression was severe. Clark presented no evidence that he was hospitalized for mental illness, sought treatment for mental

illness, or received medication for mental illness. To the contrary, although Dr. Eleftherios recommended psychotherapy for Clark, Clark did not undertake the treatment. Furthermore, Dr. Kowalski concluded that Clark's depression was not a severe mental impediment to employment. Moreover, Clark stipulated in the 1995 workman compensation agreement that he was capable of earning nearly $800 per week. (Tr. at 113–14.)

The Commissioner admits, as Clark contends, that in evaluating Dr. Kear's assessment, the ALJ noted that Dr. Kear's report pointed to a "severe" mental impairment. Though this would tend to support Clark's argument, the record shows that the ALJ rejected this assessment because it relied heavily upon Clark's own allegations and they were not credible. Clark contends that the ALJ rejected Kear's assessment based upon the ALJ's own "lay" opinion. Clark further asserts that Dr. Kear considered Clark to be a reliable informant. Appellant's Br. at 24. However, the record is clear that the ALJ relied upon the assessment of Dr. Kowalski, who reviewed the record and concluded that Clark did not have a severe mental impairment. Clark argues that this opinion cannot be relied upon because Dr. Kowalski did not base his opinion on an examination of Clark. However, an ALJ may rely on the opinion of a non-examining medical source, even when it contradicts the opinion of a treating physician, when it is consistent with the record. See *Jones v. Sullivan,* 954 F.2d 125, 128 (3d Cir.1991).

■ In light of Dr. Kowalski's opinion that Clark did not have a severe mental impairment, the lack of any evidence of treatment for a mental impairment, and Clark's own admission that he was able to pursue employment, substantial evidence clearly exists on the record to support the ALJ's finding.

Second, Clark argues that uncontested evidence not accounted for by the Commissioner demonstrates that he has severe, non-exertional pain which may be exacerbated by weather conditions and emotional stress. He contends that this evidence was omitted from the hypothetical question. See *Stunkard v. Secretary of Health and Human Services,* 841 F.2d 57, 62 (3d Cir.1988) (non-exertional physical limitations should be taken into consideration by the Commissioner in evaluating a claimant's claim).

Clark asserts that his non-exertional pain is exacerbated by his psychological condition and the weather. We have already discussed Clark's psychological impediments. Notwithstanding his claim of non-exertional, weather-related physical limitations, the Commissioner notes that the ALJ accommodated Clark's complaints of back pain by limiting him to sedentary work which allowed him to sit or stand at will.

Substantial evidence supports the Commissioner's conclusion. The Commissioner made this recommendation based upon the objective medical evidence, the opinion of three advising orthopaedic surgeons, and Clark's own testimony. We agree with the district court that there was substantial evidence to support the Commissioner's decision to deny Clark disability insurance claim.

## III.

For the forgoing reasons, we will affirm the order granting summary judgment to the Commissioner.