Barry WRIGHT, Appellant

v.

### COMMISSIONER OF SOCIAL SECURITY.

No. 09–2447.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Feb. 11, 2010.

Filed: July 7, 2010.

David M. Linker, Esq., Freedman & Lorry, Philadelphia, PA, for Appellant.

Eda Giusti, Esq., Charles Kawas, Esq., Eric P. Kressman, Esq., Social Security Administration, Philadelphia, PA, for Commissioner of Social Security.

Before: SLOVITER, ROTH, and TASHIMA,* Circuit Judges.

## OPINION

TASHIMA, Circuit Judge.

Barry Wright appeals from the District Court's order affirming the decision of the Commissioner of Social Security ("Commissioner") denying Wright's application for Social Security Disability Insurance Benefits and Supplemental Security Income. We will affirm.[1]

### I.

Our review is limited to determining whether substantial evidence supports the Commissioner's decision to deny benefits. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). If the Commissioner's findings of fact are supported by substantial evidence, such findings are binding. *Knepp v. Apfel,* 204 F.3d 78, 83 (3d Cir. 2000).

Because the parties are familiar with the facts and procedural history of the case, we describe them only briefly. Wright is a

---

* Honorable A. Wallace Tashima, Senior Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. The District Court had jurisdiction pursuant to 42 U.S.C. § 405(g). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

59–year–old man with a GED and an associate's degree in small business management. (Tr. 28, 217.) He has work experience as a longshoreman. (Tr. 105–13.) In July 2005, while working as a longshoreman, equipment Wright was operating caught on fire. (Tr. 121, 213–14, 251.) Wright sustained no physical injuries, but sought treatment for anxiety and nervousness at the Pennsylvania Hospital emergency room. (Tr. 44, 167–69.) He received treatment from Harry Doyle, M.D., whose records cover August 2005 to May 2007. (Tr. 56, 222–56.)

Wright applied for benefits on May 30, 2006, alleging disability since July 28, 2005, due to post-traumatic stress disorder ("PTSD") resulting from the workplace fire. (Tr. 93–104.) After his application was denied on August 24, 2006, Wright sought a hearing before an Administrative Law Judge ("ALJ"). (Tr. 65, 71.)

At the September 13, 2007, hearing, the ALJ heard testimony from Wright, vocational expert Bruce Martin, and medical expert Richard Saul, M.D. (Tr. 11, 20.) Wright was represented by an attorney. (Id.)

At the hearing, Wright testified that he lives at his brother's house, where he does his own laundry and cleans up after himself. (Tr. 38.) Wright testified that during the day he watches TV and smokes cigarettes. (Tr. 39.) Wright testified that his "life is not going good right now," that he is "stressed out a lot," that he is "almost going out of [his] mind," that "people tick [him] off easily," and that he is "just all messed up." (Tr. 40.)

The ALJ found that Wright's statements about the intensity, persistence, and effects of his symptoms were not entirely credible. (Tr. 15.) The ALJ determined that Wright was "not disabled" because he was "capable of making a successful adjustment to other work that exists in sig-nificant numbers in the national economy." (Tr. 18.)

The Appeals Council affirmed the ALJ's decision on June 26, 2008. (Tr. 1). Wright then sought review in the District Court. (App.15–16.) On April 21, 2009, 2009 WL 1108807, the District Court entered judgment in favor of the Commissioner. (App.14.) Wright timely appealed, arguing that the ALJ erred in (1) giving limited weight to the opinion of his treating psychiatrist, Dr. Doyle; and (2) finding Wright not entirely credible.

## II.

Wright is disabled for purposes of the Social Security Act, if he can demonstrate "that there exists a medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir.1987) (citing 42 U.S.C. § 423(d)(1)). To determine whether a claimant is disabled, an ALJ must perform a five-step, sequential evaluation, reviewing: (1) the claimant's current work activity; (2) the medical severity and duration of the claimant's impairments; (3) whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations; (4) whether the claimant has the residual functional capacity ("RFC") to return to past relevant work; and (5) if the claimant cannot return to past relevant work, whether she can "make an adjustment to other work" in the national economy. 20 C.F.R. 404.1520(a)(4)(i)–(v). The claimant bears the burden of proof at steps one through four. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir.2007). The Commissioner bears the burden of proving at step five that a significant number of jobs exist in the national economy that are appropriate for the claimant. *Id.*

The ALJ followed this five-step process. The ALJ found that Wright's PTSD was a "severe" impairment, but that it did not meet the requirements of the impairments listed in the regulations. (Tr. 13.) The ALJ also found that although Wright could not perform his past relevant work as a longshoreman, he had the RFC to perform work at all exertional levels and to perform simple, repetitive, routine tasks with low social contact. (Tr.14, 17–18). Based on this RFC, the ALJ found that Wright was not disabled because he could perform jobs, such as commercial cleaner, that were available in the local and national economies. (Tr. 17–18.)

 Wright contends that the ALJ erred by giving limited weight to the opinion of his treating psychiatrist, Dr. Doyle, who opined in an August 2007 "Medical Source Statement of Ability to Do Work–Related Activities (Mental)" that Wright was "extremely limited" in seven work-related activities.[2] (Tr. 391–92.)

A treating physician's opinion is accorded controlling weight only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); see also Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir.2001); Jones v. Sullivan, 954 F.2d 125, 128–29 (3d Cir.1991) ("[I]n the absence of contradictory medical evidence, an ALJ in a social security disability case must accept the medical judgment of a treating physician."). Here, the ALJ noted several inconsistencies in the record.

First, the ALJ noted that Dr. Doyle's report was inconsistent with the notes from three consultative examinations by, Wolfram Rieger, M.D. (Tr. 16.) Dr. Rieger opined that, while he agreed with Dr. Doyle's PTSD diagnosis, he disagreed with Dr. Doyle's assessment that Wright was totally disabled. (Tr. 221.) After a December 2005 examination, Dr. Rieger opined that Wright's PTSD "ha[d] improved appreciably" and that he "[could] work in any other job for which he is physically, by training, education and experience qualified." (Tr. 17; 211.) In May 2006, Dr. Rieger concluded that Wright had "fully and completely recovered from his [PTSD]" and that "[d]espite alleged residual post-traumatic stress disorder symptoms he [could] return to his former job on a full time, full duty basis." (Tr. 200–01.)

Second, the ALJ noted that Dr. Doyle's report was inconsistent with Dr. Saul's testimony at the hearing. (Tr. 17.) Based on reviewing Wright's file and observing Wright as he testified, Dr. Saul testified that Wright was capable of performing simple, routine, repetitive work, with low social contact. (Tr. 47–48.)

Third, the ALJ found that Dr. Doyle's August 2007 report was inconsistent with his own treatment notes. (Tr. 17.) For example, treatment notes from two January 2006 visits indicated that Dr. Doyle discussed a plan for a graduated return to work. (Tr. 232.) Also, a July 2006 assessment indicated that Wright had only slight to marked limitations. (Tr. 274–75.) However, the August 2007 report indicated that Wright had extreme limitations in several work-related activities, and Dr. Doyle made no explanation for the change. (Tr. 16–17, 391–92.)

2. The work-related activities were: understand and remember detailed instructions; carry out detailed instructions; the ability to make judgments on simple work-related decisions; interact appropriately with supervisors; interact appropriately with co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting. (Tr. 391–92.)

Wright contends that the ALJ erred because he stated that the last day of treatment by Dr. Doyle prior to his August 2007 report was in February, when it was actually in May; and because the ALJ faulted Dr. Doyle's reports for making references to other stressors, such as Wright's preoccupation with his worker's compensation litigation, financial issues, and daughter's illness. To the extent these amount to errors, they are minor and harmless. We conclude that, even without these reasons for giving less weight to Dr. Doyle's August 2007 report, the ALJ gave an adequate explanation supported by substantial evidence in the record.

█ Wright next contends that the ALJ erred in finding that Wright's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely credible." (Tr. 15.)

Wright is correct that an ALJ must give weight to a claimant's testimony "when this testimony is supported by competent evidence." *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir.1999); *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir.1999) ("Allegations of pain and other subjective symptoms must be supported by objective medical evidence." (citing 20 C.F.R. § 404.1529)). However, as discussed above, the record lacks objective medical evidence supporting Wright's subjective complaints. Specifically, the record contains Dr. Rieger's opinion that Wright was "trying to drag on his workmen's compensation case in order to maintain a posture of at least partial disability in order to obtain maximum secondary gains in third party litigation." (Tr. 201.) The record also contains Dr. Rieger's opinion that Wright exaggerated when he completed the Minnesota Multiphasic Personality Inventory ("MMPI") test and that his "credibility ha[d] not been enhanced by his

test behavior." (Tr. 203.) The MMPI revealed that Wright suffered from "schizophrenia, possibly paranoid type or delusional disorder," diagnoses that Dr. Rieger indicated were not clinically supportable. (Tr. 203.) Thus, we conclude that substantial evidence in the record supports the ALJ's credibility assessment.

### III.

For the above-stated reasons, we will affirm the judgment of the District Court.