**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 14-3971

———————

CARMEN D. DUNSON,
                                                                 Appellant

v.

COMMISSIONER SOCIAL SECURITY

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2:13-cv-00750)
District Judge:  Honorable Cathy Bissoon

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 1, 2015

Before:  AMBRO, VANASKIE and SLOVITER, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  June 11, 2015)

———————

OPINION*

———————

PER CURIAM

    Pro se appellant Carmen Dunson appeals the District Court's order affirming the

final decision of the Commissioner of Social Security, which denied her application for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

the Social Security Act (the "Act"). For the reasons set forth below, we will affirm the District Court's judgment.

We write primarily for the parties and therefore recite only the facts necessary to our disposition. In September 2003, Dunson suffered a back injury during the course of her employment as a cleaner for the University of Pittsburgh. After several months of medical treatment and physical therapy, her doctors cleared her to return to "light duty" work, with limited lifting and bending; however, no such work was available at the University. In 2005, she applied for, and was awarded, workers' compensation benefits. In 2009, Dunson worked for a few months as a part-time security guard, but she has not been otherwise employed since 2003. In part based on her apparent ability to work as a security guard, the University petitioned to terminate Dunson's workers' compensation benefits. In July 2010, after a hearing, the Department of Labor granted the petition and terminated her workers' compensation benefits effective May 2009.

In August 2010, Dunson filed applications for DIB and SSI, alleging that she had been disabled since September 2003 due to spinal stenosis and severe back spasms. After her applications were denied, Dunson requested a hearing before an Administrative Law Judge ("ALJ"), at which she was represented by counsel. At the hearing, counsel amended Dunson's alleged disability onset date from September 2003 to January 1, 2009.

On November 2, 2011, the ALJ denied Dunson's request for benefits. The ALJ determined that Dunson's "degenerative disc disease with chronic back pain" did qualify as a "severe impairment" under the Act, but was not equivalent to one of the

2

employment-precluding impairments listed in the relevant regulations. Based on the record evidence, including Dunson's testimony, the ALJ concluded that Dunson possessed the residual functional capacity to perform a limited range of sedentary work, assuming that work would allow her to alternate sitting and standing positions approximately every thirty minutes. Based on the testimony of a vocational expert, the ALJ ruled that—taking into consideration Dunson's age, education, previous work experience, and residual functional capacity—there were jobs that existed in significant numbers in the national economy that Dunson could perform. Consequently, the ALJ determined that Dunson was not disabled within the meaning of the Social Security Act, and thus not entitled to DIB or SSI benefits.[1]

Dunson appealed the ALJ's decision to the Appeals Council, which denied review. Proceeding pro se, Dunson then filed an action in the District Court. Approving and adopting the Report and Recommendation of the Magistrate Judge, the District Court affirmed the ALJ's decision and granted judgment in favor of the Commissioner. This appeal followed.

Like the District Court, we must uphold the ALJ's findings, including credibility determinations, if they are supported by substantial evidence. 42 U.S.C. § 405(g);

---

[1] The relevant period for Dunson's DIB claim began on her alleged disability onset date, and ended on December 31, 2009, when she no longer qualified for DIB coverage. The relevant period for her SSI claim began on the date she applied for benefits, and ended on November 2, 2011, the date of the ALJ's decision. The ALJ found that Dunson was not disabled, as defined by the Social Security Act, from January 1, 2009, through the date of his decision.

Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rutherford, 399 F.3d at 552 (quotation omitted). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." Id. (quotation omitted). We review the record as a whole to determine whether a factual finding is supported by substantial evidence. Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014) (citing Schaudeck v. Comm'r, 181 F.3d 429, 431 (3d Cir. 1999)). We exercise plenary review over the District Court's determination of legal issues, including whether it was proper for the District Court to decline to remand the matter to the ALJ for consideration of new evidence. See Matthews v. Apfel, 239 F.3d 589, 591 (3d Cir. 2001).

As a threshold matter, the District Court properly held that it could not consider any evidence that was not part of the record considered by the ALJ. Matthews, 239 F.3d at 594 (citing Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991)). When a claimant seeks to rely on evidence that was not before the ALJ, a district court has the option to remand the case to the Commissioner for consideration of that evidence, but only if the evidence is "new" and "material", and only if the claimant shows good cause why it was not presented to the ALJ. Id. at 592, 594. The documents attached to Dunson's District Court filings do not meet this standard. The 2009 MRI report and the excerpt reflecting Dr. Senter's medical opinion were not new, as both documents were part of the record considered by the ALJ. (Admin. Tr. 129, 450). Dr. Gerszten's October 2013 medical treatment notes were new, but are not material, because they do not relate to the time

4

period for which the benefits were denied.  See Szubak v. Sec'y of Health & Human

Servs., 745 F.2d 831, 833 (3d Cir. 1984) ("An implicit materiality requirement is that the

new evidence relate to the time period for which benefits were denied, and that it not

concern . . . a later-acquired disability or [] the subsequent deterioration of the previously

non-disabling condition.").[2]  The District Court did not err in refusing to remand the

case.[3]

   We agree with the District Court's disposition of this case.  In the District Court,

Dunson argued that the ALJ improperly disregarded a 2009 MRI report (Admin. Tr. 450,

458) and disregarded certain statements made by her neurosurgeon, Dr. Senter, in his

October 6, 2009 letter (Admin. Tr. 447-49), or reflected in the 2010 opinion terminating

Dunson's workers' compensation benefits (Admin. Tr. 129).  Specifically, Dr. Senter

---

[2] Dunson also alleged for the first time in her District Court brief that her condition had prevented her from successfully completing a June 2011 job training program with the Pittsburgh Disability Employment Project for Freedom.  Evidence related to this allegation – which does fall within the relevant time period – could theoretically be material, but Dunson has presented no such evidence.  Nor has Dunson shown good cause why she did not raise this issue before the ALJ.  See Matthews, 239 F.3d at 594.

[3] In light of Dunson's pro se status, her repeated arguments about the current severity and progressive nature of her condition, and her apparent confusion regarding the evidence that can be considered by the federal courts in reviewing the ALJ's decision, we think that it is important to explain that our holding here does not mean that Dunson is not currently disabled, or that she could not file a new application for benefits based on more recent medical evaluations.  The ALJ's decision applied only to the relevant time period. In other words, the ALJ's finding that Dunson was not disabled did not mean that she could never become disabled at some later point, or could never qualify for benefits in the future—it simply meant that she was not "disabled" as defined by the Social Security Act between January 1, 2009, and November 2, 2011.  In affirming the ALJ's decision, we make no determination and express no opinion as to whether Dunson might now qualify for benefits.

stated that Dunson's 2003 injury aggravated a pre-existing degenerative disc disease, that her condition had continued to evolve and deteriorate, that at some point in the future she would probably require corrective surgery, that lumbar stenosis is "inevitably progressive," and that he suspected that she had a "permanent disability" related to her spine. Dunson also argued that the ALJ gave insufficient weight and credit to her own testimony regarding her physical limitations and pain.

First, we note that Dr. Senter's characterization of Dunson's spinal stenosis as progressive, deteriorating, and a "permanent disability," does not preclude the ALJ's finding that Dunson was not, or at least not yet, disabled as defined by the Social Security Act. In order to establish "disability" under the Act, Dunson was required to demonstrate not only that she had a medical impairment, but also that the impairment was severe enough to prevent her from engaging in any substantial gainful activity for the statutory twelve-month period. See Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999); 42 U.S.C. § 423(d)(1)(A) and (d)(2)(A); See also Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000) (explaining that, regardless of any physician's opinion, the ultimate decision concerning disability is reserved for the Commissioner). Dunson asserts that the ALJ ignored a 2009 MRI report in which a radiologist described her stenosis as "moderate to severe." In fact, the ALJ referred specifically to that MRI, noting that Dr. Senter had concluded that the film showed only "mild to moderate" stenosis and no definite clinical evidence of nerve root compression (Admin. Tr. 457). The ALJ further explained that he would not give controlling weight to the statement of Dunson's treating physician, Dr.

6

Henry, that Dunson had no capacity to work, because that statement was inconsistent with Dr. Henry's own treatment notes and inconsistent with the entirety of the record medical evidence. Although the ALJ must consider all relevant evidence in the record, he is "free to accept some medical evidence and reject other evidence, provided that he provides an explanation for discrediting the rejected evidence." Zirnsak, 777 F.3d at 614 (citations omitted).

The ALJ also found Dunson's testimony regarding her physical limitations only partially credible. This Court defers to the ALJ's assessment of credibility, as long as the ALJ specifically identifies and explains what evidence he found not credible and why he found it not credible. Id. at 612 (citations omitted). In this case, the ALJ explained that, in light of the very conservative medical treatment Dunson was receiving,[4] and in light of her own description of her daily activities, the preponderance of the evidence did not support a conclusion that Dunson was required to lie down at regular intervals or that she would find it necessary to miss several days of work each month.

We agree with the District Court that the record as a whole provides substantial evidence to support the ALJ's finding that Dunson was capable of limited sedentary work. Accordingly, we will affirm the District Court's judgment.

---

[4] Dunson testified (and the medical records confirm) that she saw her treating physicians every three to four months, primarily to refill prescriptions. She testified that she took 800 milligrams of ibuprofen approximately every other day, and the prescription muscle-relaxant Flexeril as needed. She did not take narcotic pain relievers, receive injections, or attend physical therapy, and had not pursued any surgical treatment options.

7